CHARLESTON AND WESTERN CAROLINA RAILROAD COMPANY *v.* AUGUSTA STOCKYARD COMPANY.

When a plaintiff brings suit to recover money paid by him to the defendant, upon the ground that such payment was made under a material mistake of fact, induced by the representations of the defendant, and fails to distinctly allege the non-existence of the supposed fact upon which he relied, his petition sets forth no cause of action.

Construing together all the allegations of the petition filed in the present case, and taking the same most strongly against the pleader, it is fatally defective in the respect above indicated.

Submitted March 1, — Decided April 1, 1902.

Complaint. Before Judge Eve. City court of Richmond county. May 9, 1901.

The petition of the Charleston and Western Carolina Railway Company alleged: "(1) That the defendants, Frank G. Mangrem

and T. T. Warr, partners doing business as the Augusta Stockyard Company, of said county, are engaged in the live-stock commission business, and in the feeding and care of live stock. (2) That on or about January 30, 1899, the United States of America, through its army officers, shipped from Huntsville to Savannah, via Atlanta and Augusta, three train loads containing 661 head of stock, the same belonging to the cavalry service of the army. (3) That said stock was shipped from Huntsville to Atlanta, and thence over the Georgia Railroad to Augusta. (4) That 195 mules out of said shipment arrived at Augusta February 1, 1899, and the balance, 466 horses, arrived in Augusta February 2, 1899. (5) That as each train containing said stock reached Augusta, the stock was at once unloaded and taken charge of by the defendants, which watered, cared for, reloaded the same, and that for such services defendants claimed that they were entitled to charge, and actually did charge the United States Government, $61.56, $55.00, and $48.75 per car respectively, or a total of $165.31. (6) That said stock were consigned to be shipped from Augusta to Savannah over the line of petitioner's road running from Augusta to Yemassee, and thence over the Charleston and Savannah Railroad to Savannah. (7) That said defendants, being in possession of the stock as aforesaid, and having made claim against said stock, amounting to $165.31, demanded payment from petitioner of said $165.31, averring that said charges were for unloading, feeding, watering said stock, and their care, and reloading the same, and that such was a usual and proper charge therefor, and that defendants had authority from the officers in charge of said stock to unload, feed, water, care for, and reload said stock, and to incur the charge aforesaid. (8) Petitioner, believing that said charge was a valid claim, and a proper charge against the stock, according to the custom and usage obtaining in such cases, and relying upon said representation upon the part of defendants, and believing the same to be true, and that said charge was lawful and should be paid by the connecting carriers, according to the usual course of dealing in such cases, petitioner, upon demand of defendants, paid the same. (9) Thereafter petitioner hauled all of said stock from Augusta to Yemassee, South Carolina, and included said charge of $165.31 and the freight from Augusta to Yemassee in its bill against the connecting carrier at Yemassee. (10) That the Charleston & Savannah Railroad received said stock from

petitioner, with the bill aforesaid credited your petitioner with the amount of freight from Augusta to Yemassee, and said payment of $165.31. (11) That when the Charleston & Savannah Railroad delivered said stock to the United States authorities at Savannah, and presented the bill for its freight and the back charges, including the freight from Augusta to Yemassee, and the above charge of $165.31, the officers of the United States in Savannah paid the freight charges of the two roads, but declined to allow said charge of $165.31, averring that the Augusta Stockyard Company had no right to make such charge, and denying that it had fed, watered, handled, or cared for said stock, or that the items of said bill had been authorized by the officers in charge. (12) That thereupon the Charleston & Savannah Railroad declined to pay petitioner the said sum of $165.31, and canceled the credit previously given therefor. (13) That petitioner notified said Augusta Stockyard Company of the action aforesaid, and of the claim made by the officers of the United States that the Augusta Stockyard Company had not fed, watered, or cared for the stock, and made demand upon said defendants for the return of said $165.31. (14) That, at the request of said defendants, petitioner attempted to collect said sum from the United States authorities, but, after protracted correspondence and negotiations, the government repudiated the claim and refused to pay the same, for the reason that the said Augusta Stockyard Company had no authority to make the bill; The said defendant not having, in fact, authority to feed, load, unload, or care for the stock. (15) Thereupon petitioner informed the defendants of this action, and again made demand for repayment, which defendant refused. Wherefore, in consideration of the facts aforesaid, petitioner prays judgment against Frank Mangrem and T. T. Warr, partners doing business as the Augusta Stockyard Company, for the sum of one hundred and sixty-five and thirty-one hundredths dollars; the items of which will appear by reference to a bill of particulars, hereto attached; that process may issue," etc.

The petition was demurred to on the following grounds: (1) It sets out no cause of action. (2) It shows that the items which make up the account sued on were voluntary payments made to the defendants by the plaintiff; and for that reason they can not be recovered. (3) It shows that the defendants were induced to surrender and deliver said stock to the plaintiff by reason of said pay-

ments, thereby losing their right to hold said stock until said charges were paid; and for this reason plaintiff is estopped from recovering the items of said account from the defendants. (4) The allegations of paragraphs 5 and 14 of said petition are inconsistent and contradictory.

*J. R. Lamar*, for plaintiff, cited : 7 *Ga.* 68 – 70 ; 104 *Ga.* 19(1), 20 ; 18 Am. & Eng. Enc. L. (1st ed.) 225 – 230 ; 9 Meeson & Welsby, 54; 24 Kans. 598, s. c. 36 Am. R. 262 – 264; 55 N. Y. 211, s. c. 14 Am. R. 236.

*E. H. Callaway*, for defendants, cited: 49 *Ga.* 455; 50 *Ga.* 304; 61 *Ga.* 228 ; 67 *Ga.* 546 ; 68 *Ga.* 123 ; Civil Code, §§ 3723, 3972, 3978, 3984, 3985; 18 Am. & Eng. Enc. L. (1st ed.) 214; 17 *Ga.* 449; 57 *Ga.* 512; 89 *Ga.* 812 ; 96 *Ga.* 510; Id. 123; 28 *Ga.* 249 ; 68 *Ga.* 718.

FISH, J. The Charleston and Western Carolina Railway Company brought an action against "Frank G. Mangrem and T. T. Warr, partners doing business as the Augusta Stockyard Company." The plaintiff's petition was dismissed on demurrer, and the plaintiff excepted. An examination of the petition, a copy of which appears in the preceding official report, shows that it was lacking in the essential averment that the defendants had no right to present to and collect from the United States Government the bill of charges which the plaintiff alleges that it paid to the defendants, upon their representation that such a right upon their part existed. The defendants in error contend that the petition shows that the plaintiff sued to recover a voluntary payment which it had made to the defendants, and that such a payment can not be recovered from the one who received it. The plaintiff in error contends that its petition shows that the payment which it made to the defendants was made under a mistake of fact; and that money so paid may be recovered by the party paying it from the party receiving it. In our opinion, it matters not which of these contentions is right, because, in any view of the case, the petition is fatally defective in the absolutely essential averment above indicated. Assuming that the nature of the petition and the law applicable thereto are in accordance with the contention of the plaintiff, before it could recover the money which it paid to the defendants it would have to first allege and then prove the mistake of fact

under which it acted when it made the payment in question. The fatal defect in its petition is, that it nowhere alleges that there was such a mistake of fact upon its part. The petition sets forth, in detail, the representations which the defendants made to the plaintiff and the other circumstances which induced the latter to make the payment, but it fails to allege, either distinctly or in substance, that anything which the plaintiff believed to be true, and the belief in which induced it to part with its money, was, in fact, not true. Counsel for plaintiff contends that " The allegations of the petition really showed that this payment was made under a mistake of facts; on the faith of the representation that the stockyard company 'had authority from the officers in charge of said stock to unload, feed, water, care for, and reload said stock, and to incur the charge aforesaid.' " The latter part of this contention is true, as the petition does show that the payment was made upon the faith of such a representation by the defendants; but, as already indicated, we do not think that the petition shows that the money was paid under a mistake of fact. The petition alleges that the defendants averred that they " had authority from the officers in charge of said stock to unload, feed, water, care for, and reload said stock, and to incur the charge aforesaid;" but it does not allege that the defendants in fact had no such authority, nor does it allege that a single representation made to the plaintiff by the defendants was untrue. So far as the petition shows, every material fact in the case may have been just as the defendants represented it to be. The 11th paragraph of the petition alleges that the officers of the United States in Savannah averred "that the Augusta Stockyard Company had no right to make such charge," and denied "that the items of said bill had been authorized by the officers in charge;" but there is no allegation that the statements made by these officers were true, and there is no more presumption that they were than there is that the representations which the defendants made to the plaintiff were true.

The learned and able counsel for the plaintiff does not insist that anything in this paragraph amounts to an allegation that the representations of the defendants, upon which the plaintiff relied when it paid the defendants' bill, were untrue. He does, however, seem to rely upon the concluding clause of the 14th paragraph, as an allegation that the defendants did not have the authority in reference

to caring for the stock which they claimed. As will be seen from the reporter's statement of the petition, that clause is as follows: "The said defendant not having, in fact, authority to feed, load, unload, or care for the stock." In construing pleadings, they are to be taken most strongly against the pleader; and where the meaning is doubtful and the matter admits of two interpretations, one of which is favorable to the pleader and the other of which militates against him, the latter interpretation is the one to be adopted. If the pleader intended the phrase under consideration to be an averment of fact on the part of the plaintiff, he was singularly unfortunate in selecting the connection in which it should occur. It occurs as the concluding clause of a paragraph of the petition, embraced in a single sentence, in which the plaintiff sets forth its efforts to collect the claim from the United States authorities, the fact that the government repudiated it, and the reason which the government gave for doing so; and it is not a strained construction to hold that it is but a continuation of the pleader's statement of the reason given by the government for refusing to pay the bill. This seems to be a more natural construction than to hold that this dependent clause of the sentence is, in and of itself, an independent and distinct allegation of fact by the plaintiff. Take the expression: "The government repudiated the claim and refused to pay the same, for the reason that the Augusta Stockyard Company had no authority to make the bill; The said defendant not having, in fact, authority to feed, load, unload, or care for the stock;" and who can say that the last clause thereof does not refer to the reason given by the government for repudiating the claim, but is a separate and distinct averment of fact by the plaintiff? By comparing the averments of paragraph 14 with those contained in paragraph 11, it will be seen that, with reference to the question under consideration, they are substantially the same, and yet it is clearly evident that it was no part of the purpose of the pleader, in paragraph 11, to deny, for the plaintiff, that the defendants had the authority in reference to the stock which they claimed to have. In the 11th paragraph it is alleged that, when the Charleston and Savannah Railroad attempted to collect the freight charges and the amount of the bill in question from the United States authorities in Savannah, "the officers of the United States in Savannah paid the freight charges of the two roads, but declined to allow said charge of $165.31,

averring that the Augusta Stockyard Company had no authority to make such charge, and denying that it had fed, watered, handled, or cared for said stock, or that the items of said bill had been authorized by the officers in charge." In the 14th paragraph it is alleged: " That at the request of said defendants, petitioner attempted to collect said sum from the United States authorities, but . . the government repudiated the claim and refused to pay the same, for the reason that the said Augusta Stockyard Company had no authority to make the bill; The said defendant not having, in fact, authority to feed, load, unload, or care for the stock." When we find the pleader alleging, in the first of these paragraphs, that the officers of the United States in Savannah not only averred, in general terms, "that the Augusta Stockyard Company had no authority to make such charge," but also specifically denied that " the items of said bill had been authorized by the officers in charge," is it not a fair construction of the averments in the 14th paragraph that the pleader's purpose there was to allege that "the Government repudiated the claim and refused to pay the same, for the [general] reason that the Augusta Stockyard Company had no authority to make the bill," and for the more specific reason that the defendants did not, in fact, have "authority to feed, load, unload, or care for the stock"?

If the plaintiff intended to allege that the defendants did not have the authority in reference to the stock which they claimed to have, why did it not do so in paragraph 7, wherein it is alleged that the defendants represented to the plaintiff that they had such authority, or in paragraph 8, in which it is alleged that the plaintiff, relying upon such representation upon the part of the defendants and believing it to be true, paid the defendants' claim, or, at least, follow these paragraphs with another, clearly and unequivocally denying the truthfulness of this representation made by the defendants? Why pass over the most natural places and connections in which to deny the truthfulness of the representation made by the defendants, and then attempt to make such denial in a place and a connection where one would not naturally expect to find it, and, in doing so, use language which, in the connection in which it is used, is, at least, of doubtful and ambiguous meaning? One relying for the recovery of money paid to another under a mistake of fact, induced by the representations of the person receiving the money, must clearly

and unequivocally allege that the representations which he believed to be true, and upon which he acted when he parted with his money, were false. The form of expression which he uses for the purpose of negativing the existence of the fact upon which he relied must not, either in and of itself, or by reason of the connection in which it is employed, be of doubtful or ambiguous meaning, but its meaning must be so clear and definite as to leave no doubt in reference thereto. All doubt as to the meaning of pleading must be resolved against the pleader.

When these principles are applied to the plaintiff's petition, we think it is evident that it failed to allege the non-existence of the fact upon which it relied when it made the payment which it seeks to recover. Consequently the petition was fatally defective, and there was no error in dismissing it upon demurrer.

*Judgment affirmed. All the Justices concurring, except Little and Lewis, JJ., absent.*