## BUTLER *v.* LEWMAN & COMPANY *et al.*

1. It is the proper practice for the plaintiff in an action against several defendants to bring to this court for review, by a single bill of exceptions, separate judgments sustaining separate demurrers filed by the defendants below.
2. The owner of a building which has been damaged by fire, who delivers the same to an independent contractor for the purpose of repairing it generally and putting it in thorough order, and who surrenders to the latter full possession and complete control of the premises, is not, merely because of the peculiar arrangement of some of the interior appointments of the building, — such as an elevator-shaft, stairways, etc., which, under certain conditions, may become sources of hidden danger to one unfamiliar with their location, — liable to any person going into the building by invitation of the contractor, for damages resulting from physical injuries sustained because of exposure to such danger.
3. In such a case the contractor is in law chargeable with knowledge of the existence of such appointments and their peculiar location, and therefore, relatively to the servant of one whom he employs to do a portion of the repairing, under the duty of taking proper steps to guard him against any injury likely to occur by reason of the existence of such danger.

Submitted May 1, — Decided June 10, 1902.

Action for damages.    Before Judge Reid.    City court of Atlanta.    November 11, 1901.

*Shepard Bryan* and *Harvey Hill*, for plaintiff, cited Civil Code, § 3824; 1 Jag. Torts, § 72, p. 225 note 65; O'Brien *v.* Tatum, 84 Ala. 186; Hayward *v.* Merrill, 94 Ill. 349; Carleton *v.* F. I. & S. Co., 99 Mass. 216; Larue *v.* Farren Co., 116 Mass. 67; Clopp *v.* Mear, 134 Pa. St. 203; 10 Am. & Eng. Enc. L. 961; Webb's Pollock on Torts, 529; *Archer* v. *Blalock*, 97 *Ga.* 719; *Collier* v. *Hyatt*, 110 *Ga.* 317.

*Rosser & Carter* and *Candler & Thomson*, for defendants, cited Civil Code, §§ 2610 – 12, 3818 – 19; *Wilson* v. *White*, 71 *Ga.* 506; *Harrison* v. *Kiser*, 79 *Ga.* 588; *Air-Line R. Co.* v. *Gravitt*, 93 *Ga.* 399; *Daniel* v. *Forsyth*, 106 *Ga.* 568; 16 Am. & Eng. Enc. L. 411 – 12; Bailey, Pers. Inj. §§ 2603, 2606, 3022 – 6; 2 Thomp. Neg. (ed. 1880) §§ 12, 34; Hexamer *v.* Webb, 101 N. Y. 377;

Blake v. Ferris, 55 Am. Dec. 309 ; Bish. Non-Con. L. § 602 ; Beasley v. Wheeler, 27 L. R. A. 271 ; Holt v. Whatley, 51 Ala. 569 ; Kimball v. Cushman, 103 Mass. 194 ; Wood v. Cobb, 13 Allen, 58 ; Balch v. Smith, 7 H. & N. 736 ; Devlin v. Smith, 89 N. Y. 470 ; Butler v. Townsend, 126 N. Y. 125 ; Kennedy v. Spring, 160 Mass. 203 ; Armour v. Hahn, 111 U. S. 313 ; Porter v. Coal Co., 84 Wis. 418 ; Fraser v. Lumber Co., 45 Minn. 235 ; Wanamaker v. Burk, 111 Pa. St. 423.

LUMPKIN, P. J. The plaintiff in error, Butler, brought in the city court of Atlanta an action for damages against Daniel O. Dougherty, William A. Speer, Mrs. Katie Speer, Mrs. John Silvey, M. T. Lewman & Company, a partnership, and the persons who were members of that firm. The facts upon which he based his alleged right of recovery were, as gathered from his petition, in substance as follows: The four defendants first named "are the owners, as tenants in common, of the land and building fronting twenty-five (25) feet on the east side of Loyd street and known as lot No. 2 in the plat of the Markham House property," in the city of Atlanta. "On June 1st, 1901, and before and after said date, the defendants M. T. Lewman & Company were engaged as contractors in rebuilding said building, which had been partially destroyed by fire, and they were occupying and in possession of said premises. They were under contract to rebuild with said other defendants hereinbefore referred to as owners." On that date the plaintiff, "who is an iron-worker, was doing galvanized-iron work on said building. He was employed by the Moncrief-Carter Company, who had contracted with said Lewman & Company to do certain galvanized-iron and tin work on said building. About 11:30 o'clock, a. m., on said June 1, 1901, petitioner was at work in said building, putting galvanized iron under the front windows on the third floor and overhauling it, the fire having damaged that part of the building. While petitioner was at work it became necessary for him to have a saw in order to saw to the right length a piece of wood which was needed to firmly fix the galvanized iron in place. There was no saw on petitioner's scaffolding, and it was therefore necessary for petitioner to go down to the lower floor in order to get a saw. There was no ladder leading from the scaffold where petitioner was at work to said floor, and the only means to

get down was by the stairway. This was the only method provided by the defendants, the contractors, for persons to use in reaching and in descending from the upper stories of the building. Said stairway and the elevator-shaft in said building were all contained within one wall, which jutted out in the form of a square from the partition wall on the north side of said building. In the side of said square wall on said third floor, where petitioner was at work, are three doors, all exactly alike in size and appearance. One of said doors opens into the ascending steps, and one of said doors to the descending steps, and the other one of said doors into the elevator-shaft. All of said doors were unlocked and unfastened, but closed, and there was no sign or mark of any kind by which petitioner or any other person could tell which door opened into the elevator-shaft or to the steps. Said doors are about an equal distance apart. Said shaft was not in use from elevator, and had not been for some time." The "only light that reaches said part of the building where said doors are located is from remote windows at each end of said building, the distance being about twenty-five or thirty yards. The light is very faint because the said building is very deep and narrow, being less than twenty-five feet in width and about one hundred and fifty (150) feet in length." On the date above mentioned, " the interior of said building about said doors was dark and gloomy, and it was necessary for petitioner to grope his way about in his search for the door and the stairway. It was too dark to see how to get about." He " started to descend from said third floor by means of said stairway, [and] went toward the door leading to said stairway; but on account of the darkness in the interior of the building and on account of the darkness within the wall inclosing said stairways and elevator-shaft, and because all of said doors stood so close together, petitioner entered the door leading to the elevator-shaft and fell down said shaft three stories and into the basement of said building," sustaining serious and permanent injuries. He " had no knowledge of said elevator-shaft, and the darkness was so great and the arrangement of the doors was such that plaintiff, in the exercise of ordinary care and intending to enter the door which led to the stairs, entered the door opening on the shaft. There was no light on the landings of the steps, and the door leading to the elevator-shaft was not nailed or fastened or marked by any signal or sign, and there was no protection

whatever about said place. After opening said door it was dark inside, just as it was after opening either one of the other two doors leading to the stairways," and this being so, "the danger which resulted in his injury was hidden. The arrangement of the doors was very confusing. It was very dark at said point, and defendants had placed no lights or signals there of any kind. Said shaft and stairways and the arrangement of said doors were for said reasons dangerously constructed and allowed to remain so. Said elevator-shaft and the arrangement thereof was a part of the building owned by defendants, the owners, before said building was partially destroyed by fire ; and said arrangement was in existence when the defendants, the contractors, went to work upon said building to rebuild it," but they nevertheless "continued said dangerous condition after taking possession of said property, in violation of the duty to exercise ordinary care, which they owed to all persons lawfully upon said premises and having occasion to use said stairway." After the injury to the plaintiff occurred, the contractors "caused the door entering said shaft to be securely fastened, so that no other person could be deceived by the confusing arrangement and thereby injured." Petitioner was himself without fault, "and he was injured by the negligence of all the defendants," which "said negligence consisted of the following acts and omissions:" (1) failing "to have said stairway and elevator-shaft lighted;" (2) omitting "to have the interior of the building about said elevator-shaft properly and sufficiently lighted; " (3) not having "the door leading to said elevator-shaft marked by some sufficient sign, or securely fastened;" (4) failing "to warn petitioner of the dangerous and confusing arrangement of the said three doors in said wall;" (5) causing "said dangerous, confusing, and deceptive arrangement of doors to be constructed in said building," and allowing "said arrangement to continue;" and (6) not "furnishing plaintiff safe means of ingress and egress to and from the upper stories of the building," and being "negligent in other respects."

For convenience we shall hereinafter refer to the persons to whom it was alleged the building belonged as "the owners," and to the other defendants as "the contractors." The owners joined in a general demurrer to the plaintiff's petition, and a like demurrer was filed by the contractors. Both of these demurrers were sustained, the court entering a separate judgment as to each. There-

upon Butler sued out a bill of exceptions in which he assigned error upon the action of the court in thus disposing of his case.

1. Before undertaking to pass upon the merits thereof it is necessary for us to consider whether this court has jurisdiction to entertain the present writ of error, the defendants having moved to dismiss it on the ground that the plaintiff could not lawfully, by a single bill of exceptions, bring under review here the two separate judgments rendered in the court below. The question of practice thus raised is.entirely free from difficulty. There was but one case in the lower court, and upon its final termination therein it was properly brought to this court by a single bill of exceptions, the plaintiff in error not being at liberty, even had he chosen to do so, to bring up his case by piecemeal. Counsel for the defendants in error cited and relied on a number of decisions by this court to the effect that separate and distinct judgments rendered in separate and distinct cases which are tried together in a lower court can not be legally brought here for review by a single bill of exceptions. See *Walker* v. *Conn*, 112 *Ga.* 314; *Wells* v. *Coker Banking Co.*, 113 *Ga.* 857, and the cases therein referred to. Obviously, however, these decisions have no bearing whatever on the question with which we are now called upon to deal.

2. There was clearly no error in sustaining the demurrer filed by the owners. It appears from the petition that they contracted with Lewman & Company to reconstruct the building in question, surrendering to that firm all control over the same, and that at the time of the plaintiff's injury its members or representatives "were occupying and in possession of said premises." In other words, the owners, as it was their legal right to do, relieved themselves of all responsibility in the matter by making an absolute surrender, for the time being, of their possession of the building and placing it under the complete control of independent contractors. This branch of the case is controlled by the provisions of the Civil Code, §§ 3818, 3819. See, also, *Brunswick Grocery Co.* v. *Railroad Co.*, 106 *Ga.* 270; *Ridgeway* v. *Downing Co.*, 109 *Ga.* 591, and cases cited. In reaching the conclusion above announced we have not overlooked the allegations in the plaintiff's petition with respect to the location of the stairways and elevator-shaft and the confusing arrangement of the doors leading thereto. The owners certainly owed no duty to the plaintiff or to any one else, when planning the interior ar-

rangements of their building, to choose a location for their ele-
vator-shaft different from that selected by them; and granting
that its proximity to the stairways and the confusing arrangement
of the doors just referred to constituted a source of danger to one
unfamiliar with the premises, the only legal duty which rested
upon the owners was to take proper precautions to guard against
this danger such persons as entered the building at their invitation,
express or implied.    After surrendering possession of the premises
to independent contractors, the owners could not reasonably be ex-
pected to any longer exercise such precautions, and therefore were
not bound to take any steps looking to the protection of persons en-
tering the building at the instance of the contractors.    Accordingly,
it can not fairly be said that the plaintiff occupied the position of
one who was, by implication at least, invited by the owners to en-
ter and galvanize their building; for it is clear that, having for the
time being relinquished all control over it, they had no right, so
long as the contractors remained in the lawful possession thereof,
to extend to any one an invitation to go upon the premises for any
purpose save, perhaps, in the event of some extraordinary emergency
which would justify the owners in temporarily assuming control
over the same even against the will of their contractors.

3. We have no hesitation in saying that the demurrer filed by
the contractors should not have been sustained.    It is not a legit-
imate inference from the allegations of the plaintiff's petition that
the Moncrief-Carter Company occupied, with respect to the work
it was employed to do, the position of an independent contractor.
It is true the plaintiff alleges that this company "had contracted
with said Lewman & Company to do certain galvanized-iron and
tin work on said building"; but construing this allegation in the
light of the other facts set forth, it simply means that the Mon-
crief-Carter Company was employed by the contractors to do certain
work, they still retaining possession of and control over the build-
ing.    This being so, they were bound to take reasonable measures
to protect the employees of the Moncrief-Carter Company from in-
juries likely to arise from hidden defects in construction or places
of unusual danger about the building.

We quite agree with counsel for the contractors that the relation
of master and servant did not exist between them and Butler, and
that therefore they owed to him none of the duties growing out of

such a relation. It is equally true, however, that the plaintiff was on the premises by the invitation of the contractors, and had a right to expect that they would exercise proper precautions in guarding him against hidden dangers of the existence of which he could not, by the use of ordinary care, inform himself, and with knowledge whereof they were in law chargeable. He alleges that in undertaking to go from an upper to the lower floor of the building for the purpose of procuring a necessary tool, he attempted to use the stairway, which was the only means of descent furnished him. Assuming that he was carrying on the work it was his duty to his master to perform, and that the arrangement of the stairways, elevator-shaft, and doors described in his petition constituted a trap exposing him to a hidden danger from which the exercise of due diligence on his part could not protect him, he undoubtedly was entitled to a recovery. Whether he was, in point of fact, attempting to go upon a necessary errand and was exercising ordinary care, and whether the contractors were, in any or all of the particulars alleged, guilty of negligence which brought about the injuries complained of, were questions for the determination of a jury under proper instructions from the court.

*Judgment affirmed in part, and in part reversed. All the Justices concurring, except Lewis, J., absent.*