### 5955.   NEWBURN *v.* HEALEY REAL ESTATE AND IMPROVEMENT COMPANY.

1. A recovery for the homicide of the servant of a contractor who had undertaken to construct the steel framework of a building can not be had against the owner of the building in process of construction, if it appears that such owner had surrendered to such contractor full possession and complete control of the premises.

2. The obligations imposed by the building ordinances of the City of Atlanta upon contractors and owners erecting buildings are not by its terms imposed on the contractor and the owner jointly, but, where the contractor and the owner are acting independently, are imposed only upon one or the other according to the degree of control either may exercise, or the nature and conditions of the contract.

3. The court did not err in sustaining the demurrer to the petition; but if the petition be so amended, before the remittitur from this court is made the judgment of the court below, as to set out a sufficient cause of action, it is allowed, as requested by counsel, that the case be reinstated.

DECIDED SEPTEMBER 25, 1915.

Action for damages; from city court of Atlanta—Judge Reid. June 6, 1914.

*R. W. Crenshaw, Anderson & Rountree,* for plaintiff.

*Rosser & Brandon, Slaton & Phillips, C. T. & L. C. Hopkins,* for defendant.

WADE, J. Mrs. Frances Newburn brought suit against the Healey Real Estate & Improvement Company, a corporation, for the homicide of her husband. Her original petition was as follows:

"The petition of Mrs. Frances Newburn shows:

"1.   The defendant is Healey Real Estate & Improvement Com-

pany, a corporation organized under and by virtue of the laws of Georgia, with its principal office in said State and county.

"2.   Defendant has damaged petitioner in the sum of twenty-five thousand ($25,000.00) dollars in the manner hereinafter alleged.

"3.   Petitioner shows that she is the widow of William J. Newburn, who was killed on or about June 3, 1913, by means of the following described negligence of the defendant.

"4.   Petitioner shows that on or about the above-named date defendant, Healey Real Estate & Improvement Company, was constructing in the city of Atlanta, said county, a sixteen-story steel-frame building, now commonly known as 'The Healey Building.'

"5.   Petitioner shows that upon said date her husband, William J. Newburn, was employed by the Bergendahl-Bass Construction Company, which had the contract for the iron work on said building, and was engaged in said work at said time.

"6.   Petitioner shows that upon said date her husband was working upon the ninth floor of said building, in charge of a large derrick, with which lumber and material were being hoisted from the seventh to the eleventh floor of said building, to which latter height the steel work upon said building had progressed at that time.

"7.   Petitioner shows that a lot of lumber had been hooked upon said derrick, that her husband had signalled the engineer to hoist away, and the load was being swung around the building toward the eleventh floor of said building.

"8.   Petitioner shows that as said load of lumber swung about thirty feet above the head of her husband, who at the time was standing on the ninth floor of said building, giving instructions to the engineer, said load of lumber swung and struck the arm of said derrick, causing three of the planks from said load to slip from the chains holding them, and to fall and strike petitioner's husband, knocking him backwards and causing him to fall through an unplanked opening in said floor, two or three feet wide, and down through eight successive unplanked floors, and to be killed at the bottom.

"9.   Petitioner shows that the opening through which her husband first fell was neither covered by a plank nor protected by a

railing or guard of any kind, nor were the succeeding floors, through which he fell, covered or guarded in any way.

"10. Petitioner shows that the following ordinance of the city of Atlanta, regulating the construction of buildings and defining the duties of the owners thereof with respect thereto, was in force on the date above mentioned, same being section 70 of the building code of the city of Atlanta: 'All contractors and owners, when constructing buildings, where the floors or filling in between the floor-beams thereof are of fire-proof material or brickwork, shall complete the flooring or filling in as the building progresses, to not less than three tiers of beams below that on which the iron work is being erected. If such buildings do not require filling in between the beams of floors with brick or other fire-proof material, all contractors for carpenter work, or the owners of the buildings in the course of construction, shall lay the under flooring thereof on each story as the building progresses, to not less than within two stories below the one to which said building has been erected. When double floors are not to be used, such contractor, or the owner, shall keep planked over the floor two stories below the story where the work is being performed. If the floor-beams are of iron or steel, the contractor for the iron or steel work of buildings in course of construction, or the owners of such buildings, shall thoroughly plank over the entire tier of iron or steel beams on which the structural iron or steel work is being erected, except such spaces as may be reasonably required for the proper construction of such iron or steel work, and for the raising or lowering of materials to be used in the construction of such buildings, or such spaces as may be designated by the plans and specifications for stairways and elevator-shafts. If elevating machines or hoisting apparatus are used within a building in course of construction, for the purpose of lifting material to be used in such construction, the contractors or owners shall cause the shafts or openings in such floor to be enclosed or fenced in on all sides by a substantial barrier, at least four feet in height, except on the side and floor where the material is being unloaded.'

"11. Petitioner shows that defendant owns said building just described, and the lot on which same is situated, and did own same at the time her husband was killed, and agreed in consideration of the permit to build, given it by the city, 'to conform to all

city ordinances regulating the same;' a copy of which permit is hereto attached, marked 'Exhibit A,' to which reference is prayed as a part thereof.

"12.    Petitioner shows that defendant was negligent in omitting thoroughly to plank or cover the floor on which her husband was at work and through which he fell.

"13.    Defendant was negligent in omitting to cover, plank, or guard in some way, the hole or opening, two or three feet wide, through which her husband was knocked.

"14.    Defendant was negligent in failing to have planked or covered the succeeding floors through which petitioner's husband fell to the ground.

"15.    Defendant was negligent in failing to warn petitioner's husband of the existence of the opening in the ninth floor, and of the fact that the floors beneath were not covered or planked.

"16.    Petitioner shows that the above described negligence of the defendant was the approximate cause of her husband's death, without which same could not and would not have resulted.

"17.    Petitioner shows that at the time of his death her husband was a strong, able-bodied man, thirty-two years of age, and earning five dollars per day.

"18.    Petitioner shows that in no respect was her husband negligent, nor could he, by the exercise of reasonable care, have avoided the consequences of defendant's negligence."

The plaintiff filed an amendment which was as follows: "1. She strikes from said petition paragraph 6 and inserts in lieu thereof the following: 'Petitioner shows that upon said date her husband was working on the ninth floor of said building, assisting in the operation of a large derrick, located on said ninth floor. She shows that a force of hands at that time, with the use of said derrick, were engaged in removing lumber from the seventh floor to the eleventh floor of said building, to which latter height the steel structural work at that time had progressed. Her husband was at the time actually engaged in receiving signals from a corps of hands on the seventh floor and conveying same to the engineer in charge of the derrick. Said lumber was being loaded on the seventh floor of said building by a gang of men in charge of the superintendent for Bergendahl-Bass Construction Company, and the way and manner in which said lumber was being loaded was not

known to deceased.' 2. For further amendment, petitioner inserts, between paragraphs 11 and 12 of her petition, paragraph 11½ as follows: 'Petitioner shows that said building in process of construction was a steel-framed, fire-proof office building, with the floors or the filling in between the floor-beams thereof of fire-proof material.'"

The defendant demurred to the original petition, and also demurred to the amended petition. The demurrer to the original petition insisted that no cause of action was set out, since the petition showed that no contractual relationship existed between the plaintiff's intestate and the defendant, and especially that the relationship of master and servant did not exist between them, since the petition affirmatively showed that the deceased was an employee of the Bergendahl-Bass Construction Company, and that no obligation arising out of the relationship of master and servant was due him except from Bergendahl-Bass Construction Company; that the petition showed that the work in and about which the deceased was killed was not work which was being done by the defendant, but was work which was being done by the master of the deceased, to wit, the Bergendahl-Bass Construction Company; that the petition showed that the deceased was directly in charge of, controlling, and directing the work in and about which his death resulted; that the petition showed that the deceased was familiar with the physical conditions under which the work was being done, and was perfectly familiar with the manner in which the work was being done, and if there was any negligence in omitting to plank or cover the floors on which he was standing, such omissions were not only physically known to the deceased, but were the result of his direct supervision; that the petition showed that the proximate cause of the injury was the handling of the derrick which was under the direction, control, and supervision of the deceased. To the petition as amended the defendant demurred as follows: "Further demurring, defendant says, that said petition as amended shows that the deceased was a servant of the Bergendahl-Bass Construction Company, engaged in the work of removing lumber from the seventh floor to the eleventh floor, which said removal of said lumber was being accomplished through the medium of a derrick; that said deceased was actively participating in said work and in the management of said derrick, and that he was a fellow servant with

all engaged in that particular work, including such fellow servants as were preparing the lumber for removal, and the engineer and assistants who were engaged in elevating the lumber, and that no negligence upon the part of either the employees engaged in loading the derrick or the employees engaged in operating the derrick would give the plaintiff a cause of action for the death of the deceased. And because said petition as amended shows that this defendant was not participating in, connected with, or responsible for, either the loading of the derrick or its operation. And because the petition as amended shows that the proximate cause of the injury was permitting the load of lumber being hoisted to strike the arm of the derrick, thereby causing planks to slip from the chains. And that said petition shows the plaintiff's intestate was giving the signals and directions for the operation of said derrick and the load. Because said petition discloses that any failure to plank or cover the floor was a patent defect, fully obvious and known to the deceased, who assumed the risk of said patent defect. Because the ordinance quoted in paragraph 10 of the petition shows that the obligation to comply with its terms applies only to the owner when he is doing the work of construction, and does not apply to the owner when the work is being done by contract. The petitioner charging that the iron or steel work to which said ordinance applies was not being done by this defendant, but was being done by an independent contractor, the Bergendahl-Bass Construction Company, of which the plaintiff's intestate was a servant." The court sustained the demurrer, and the petition as amended was dismissed. To this judgment the plaintiff excepted.

1. It was held in *Butler* v. *Lewman,* 115 *Ga.* 752 (42 S. E. 98), that "The owner of a building which has been damaged by fire, who delivers the same to an independent contractor for the purpose of repairing it generally and putting it in thorough order, and who surrenders to the latter full possession and complete control of the premises, is not, merely because of the peculiar arrangement of some of the interior appointments of the building,—such as an elevator-shaft, stairways, etc., which, under certain conditions, may become sources of hidden danger to one unfamiliar with their location,—liable to any person going into the building by invitation of the contractor, for damages resulting from physical injuries sustained because of exposure to such danger." It appears in that

case that the owner contracted with the builders to reconstruct the building in question, and surrendered to the builders all control over the structure, and at the time the plaintiff was injured the members or representatives of the firm of contractors "were occupying and in possession of said premises." The court said: "In other words, the owners, as it was their legal right to do, relieved themselves of all responsibility in the matter by making an absolute surrender, for the time being, of their possession of the building and placing it under the complete control of independent contractors. . . After surrendering possession of the premises to independent contractors, the owners could not reasonably be expected to any longer exercise such precautions, and therefore were not bound to take any steps looking to the protection of persons entering the building at the instance of the contractors. Accordingly, it can not fairly be said that the plaintiff occupied the position of one who was, by implication at least, invited by the owners to enter and galvanize their building; for it is clear that, having for the time being relinquished all control over it, they had no right, so long as the contractors remained in the lawful possession thereof, to extend to any one an invitation to go upon the premises for any purpose save, perhaps, in the event of some extraordinary emergency which would justify the owners in temporarily assuming control over the same, even against the will of their contractors."

In the present case, according to the allegations of the petition, the plaintiff's husband was the servant of the contractor, who had undertaken to erect the steel framework of a building which the defendant company "was constructing," and his death was brought about by the concurrent operation of two separate and distinct causes,—the one cause resulting from the negligence of one or more of his fellow servants, and the other from the negligence of the owner of the building in failing to provide a reasonably safe place for the deceased to work while on the premises as a licensee engaged in carrying on the work of the contractor. For the negligence of other servants of the contractor the defendant of course could not be held liable to the plaintiff on account of injury to the deceased, who was not even its servant; but if, as is insisted by the plaintiff in error (who was the plaintiff in the court below) and as alleged in the petition, the death of the plaintiff's intestate resulted from

the concurrence of negligence both on the part of fellow servants of the deceased and of the owner of the building, a jury should be allowed to determine whether the deceased could have reasonably anticipated the concurrence of the two acts of negligence which resulted in his death, and also to determine which particular act of negligence was the proximate cause thereof, if the petition be amended as hereinafter suggested.

Since pleadings are always to be construed most strongly against the pleader *(Charleston R. Co.* v. *Stockyard Co.,* 115 *Ga.* 70, 41 S. E. 598), it becomes important, in the light of the ruling in *Butler* v. *Lewman,* supra, to determine whether the petition in this case affirmatively and distinctly alleges that the defendant was in charge of the construction of the building as a whole, and was in general control of the premises upon which it was being erected. Paragraph 4 of the petition alleges that the defendant "was constructing in the city of Atlanta, said county, a sixteen-story steel-frame building, now commonly known as 'The Healey Building.'" Paragraph 5 of the petition alleges that on the day he met his death the husband of the plaintiff "was employed by the Bergendahl-Bass Construction Company, which had the contract for the iron work on said building, and was engaged in said work at said time." Nowhere in the petition, as originally drawn or as amended, can be found any allegation which more distinctly sets forth the connection existing between the owner of the building in process of construction and the work being carried on by the Bergendahl-Bass Construction Company at the time the death of the plaintiff's husband occurred, or more distinctly sets forth the degree of control exercised by the owner over the building itself or the premises upon which the building was being erected. Nothing further appears as to this than may be inferred from the vague general statement that the defendant "was constructing" the building. Following the rule already referred to, we may safely assume that so far as the allegations in the petition of the plaintiff are concerned, the contractor, and not the owner, was in the control of the premises, and had entire charge of all the work *then* being carried on, in pursuance of the general plan of the owner to finish and complete the sixteen-story building described in the petition. This being true, and without any other and further allegations rendering the defendant liable, it is apparent that no cause of

action was set forth in the petition. The ruling of this court in *Huey* v. *Atlanta,* 8 *Ga. App.* 597 (70 S. E. 71), is directly in point, and clearly indicates the necessity for a distinct allegation to the effect that the owner had not in fact surrendered the custody of the premises or of the structure or other thing in process of erection to the independent contractor, in order to warrant a recovery against the owner, where a servant of the contractor, while attempting to do the designated work in a manner reasonably to be anticipated, was injured because of some latent danger in the conditions surrounding the premises, structure, or other thing, of which the owner had actual or constructive knowledge, and of which the workman had no knowledge.

2. The plaintiff in her petition does not, however, base her right to recover solely on the idea that the owner of the building was constructing it and retained the general management and control of both the building and the premises, and therefore was liable to any licensee, such as a servant of the contractor, on account of the failure to provide a reasonably safe place for him to work; but the plaintiff alleges that under an ordinance of the city of Atlanta, relative to building, the owner, even though the control and possession of the premises and the structure may have been, for the time being, surrendered to an independent contractor, was nevertheless bound to take certain precautions to guard against possible injuries to the contractor's employees or servants; and that to the extent necessary to provide for their safety, as required by the building ordinance, the owner retained such possession and control of the structure and premises as would authorize a recovery against the owner for failure to comply with the ordinance. The amendment to the petition alleges that the building in process of construction "was a steel-framed, fire-proof office building, with the floors or the filling in between the floor-beams thereof of fire-proof material." The ordinance is set out in full in the original petition. It is clear that the duties imposed by the several subdivisions of this ordinance are placed upon the contractor *or* the owner alternatively. In other words, the evident meaning of the ordinance is that the contractor *or* the owner must comply with the several requirements therein enumerated—one or the other. The first division or part of the ordinance provides that "All contractors and owners, when constructing buildings, where the floors

or filling in between the floor-beams thereof are of fire-proof material or brickwork, shall complete the flooring or filling in as the building progresses, to not less than three tiers of beams below that on which the iron work is being erected." It is unreasonable to assume that this division of the building ordinance requires that both contractor *and* owner "shall complete the flooring or filling in as the building progresses," etc.; for if the contractor had contracted to construct the entire building, plainly the duty of filling in between the floor-beams would rest exclusively upon him, as the owner could not interfere with his operations without possibly working injury to the contractor and becoming liable himself for any resulting delay or damage. On the other hand, if the owner was himself in charge of the general construction of the building, and retained control and management thereof, upon him perhaps would devolve the duty, imposed by this division of the ordinance, to complete the fire-proof flooring as the building progressed, "to not less than three tiers of beams below that on which the iron work is being erected." If the petition in this case had alleged that the Bergendahl-Bass Construction Company had contracted to erect the steel structure *alone,* then obviously the duty of filling in the fire-proof flooring between the beams as the building progressed, to not less than three tiers of beams below that on which the iron work was being erected, would devolve upon the owner under the ordinance, since it is apparent that this necessary part of the construction would amount to a considerable portion of the cost of the building as a whole, and it would be absurd to assume that the ordinance was designed to place upon a contractor who had only engaged to erect the steel framework the further burden of supplying the fire-proof filling between the floor-beams as the work progressed, in the event the owner failed to do so. We construe this section, therefore, to mean, so far as this case is concerned, that if the contractor was only under contract to erect the steel framework, the duty of keeping the fire-proof flooring constructed to not less than three tiers of beams below that on which the iron work was being erected, would devolve upon the owner; but if, on the other hand, the contractor was under contract to erect the entire building or so much thereof as would include the fire-proof material to be laid between the floor-beams, then the contractor, and not the owner, would be bound to comply with this division of the ordinance.

That portion of the building ordinance which refers to buildings that do not require filling in of brick or other fire-proof material between the floor-beams need not be considered, as, under the amendment to the petition, this particular building *did* require filling in between the floor-beams with fire-proof material.

The next division of the building ordinance requires that "the contractor for the iron or steel work of buildings in course of construction, or the owners of such buildings, shall thoroughly plank over the entire tier of iron or steel beams on which the structural iron or steel work is being erected, except such spaces as may be reasonably required for the proper construction of such iron or steel work, and for the raising or lowering of materials to be used in the construction of such buildings, or such spaces as may be designated by the plans and specifications for stairways and elevator-shafts." It is obvious that the duty imposed by this division of the ordinance is thereby placed upon *either* the contractor for the iron or steel work or upon the owner, and not upon both contractor and owner. This is the only reasonable construction we can give to this portion of the building ordinance, as otherwise the owner, in the effort to protect himself against claims for damages which might be urged against him on account of injuries to employees of the contractor, as licensees of the owner, brought about by the failure of the contractor to properly plank over or cover the entire tier of iron or steel beams on which at the time the structural iron or steel work was being erected, might feel compelled to assert his control over the steel structural work as it progressed, and perhaps to even take possession thereof at different times long enough to place in position the necessary planking or covering, and possibilities of conflict and friction between the owner and contractor would be greatly and unreasonably multiplied. The only fair construction to be placed upon this division of the ordinance is that it requires that where the steel work is contracted for, then the contractor must plank over the steel or iron beams on which the structural iron or steel work is being erected; but where the owner himself is doing the structural steel work, he of course must do the necessary planking.

The last division of the building ordinance provides that "If elevating machines or hoisting apparatus are used within a building in course of construction, for the purpose of lifting material to be

used in such construction, the contractors or owners shall cause the shafts or openings in such floor to be enclosed or fenced in on all sides by a substantial barrier, at least four feet in height, except on the side and floor where the material is being unloaded." Here again the ordinance applies to the contractor *or* the owner—not to both at the same time. It does not appear from the petition, however, that this portion of the ordinance bears directly on the case under consideration, since it is nowhere alleged that the hoisting apparatus referred to in the plaintiff's petition was located within the building in course of construction, or that it was operated in any shaft or opening through any one or more floors in the building.

The petition alleges that the deceased was knocked backwards by a falling plank and fell through an unplanked opening in the floor on which he was then working, down through several successive floors, and was killed at the bottom. The provision of the building ordinance which requires that the entire tier of iron or steel beams on which the structural iron or steel work is being erected shall be thoroughly planked over provides also that "such spaces as may be reasonably required for the proper construction of such iron or steel work and for the raising or lowering of materials to be used in the construction of such buildings, or such spaces as may be designated by the plans and specifications for stairways and elevator shafts," may be left open. It does not appear from the plaintiff's petition whether the opening, two or three feet wide, through which the plaintiff's husband fell, was such an opening as is authorized under this provision of the ordinance; and therefore, so far as the ordinance is concerned, it does not follow that the existence of the opening referred to in the petition was per se negligence on the part of either the contractor or the owner; for, without some further allegations, it must be assumed that the opening was one of the permitted openings, and then the question remaining would be whether the fact that the contractor or owner (according to who was in charge of the steel construction) was negligent in leaving the opening in the floor, irrespective of the building ordinance, and, if negligent in this respect, whether the defect was so obvious as to preclude a recovery on account of its existence.

3. The trial court correctly sustained the demurrer to the petition as amended. If, however, the plaintiff still further amends

her petition before the remittitur from this court is made the judgment of the court below, so that the petition as amended shall set out a sufficient cause of action, the case may be rein-stated.　　　　*Judgment affirmed, with direction.*