## THE AUCHENARDEN.

### (District Court, E. D. New York. March 30, 1900.)

SHIPPING—INJURY TO STEVEDORE—LIABILITY OF SHIP.

A ship which is turned over for loading to a contractor, who is fully informed of the location of a hatchway, and that it is uncovered, owes no further duty to warn the individual stevedores employed by such contractor of the danger from such hatchway, or to protect them therefrom, but such duty devolves upon their master; and the ship cannot be charged with liability for an injury to a stevedore resulting from his falling through such hatchway.

In Admiralty. Suit in rem by a stevedore to recover for personal injury.

Foley, Wray & Taylor (Mr. Foley, of counsel), for libelant.
Convers & Kirlin (Mr. Kirlin, of counsel), for claimant.

THOMAS, District Judge. The libelant, a longshoreman, was employed by the Atlantic Stevedoring Company, who contracted with the charterers to load the steamship Auchenarden. The ship was new, and at the time of the accident was taking her first cargo, which in part consisted of iron rails. The libelant fell through the cross-bunker hatchway at the after end of the No. 2 hold. There was no cover for this hatch, although for the corresponding hatches immediately above there were covers, which were in position. The bunker hatch was usual in kind and in location, although there was no partition or bulkhead between the No. 2 hatch and the bunker hatch, of which arrangement the libelant professed to be unacquainted. The iron rails were lowered to the between decks, and then carried or swung back and placed over the cross-bunker hatch, as the same was not intended to be used for the purpose of loading the lower hold. The day had been rainy, and, while it was sufficiently light immediately beneath No. 2 hatchway and in its immediate vicinity, yet the light was shut off from the bunker hatch to such a degree that a person coming out of the light would not discover readily the hatch, or the fact that it was uncovered, until the eyes became accustomed to the condition. No artificial light was furnished, and the only light was such as came through hatchway No. 2. The libelant had been working that morning, receiving the rails as they were let down through hatchway No. 2, but had not been aft to the bunker hatch, and from his position he could not and did not see its uncovered condition. Shortly previous to the accident, he went up on the deck, and upon his return was directed to assist in stowing away the rails, which duty took him in the direction of the bunker hatch. While moving sideways towards the hatch, helping to bear the first rail since his arrival, he fell through the hatch, as only about two-thirds or three-fourths of it had been covered at that time.

The present case differs from certain others in that there was no partition or bulkhead between hatch No. 2 and the bunker hatch, and there was no intention to use the open hatch for placing cargo

in the lower hold at that time. But there was nothing unusual in the location or direction of the bunker hatch, or of its *relation to* hold No. 2. The contracting stevedores were fully informed before the work began that the hatch was uncovered, and that. there was no cover for it, and they remained possessed of the ship with such knowledge. Such stevedores employed the libelant. It was for these stevedores to use the proper care to furnish the libelant a safe place to work, to give him any necessary instructions relating to dangerous places, or to furnish such safeguards as a master would be required to do under the circumstances of the case. The ship bore no contractual relation to the libelant; it had not employed him; it had made no contract, expressed or implied, for protecting him. The ship had a right to come to port with all its hatches on or off, or with part of them on or part of them off, quite according to its own convenience; and if it owed a duty of guarding an open hatch, or of advising of its existence, the duty was fulfilled when the conditions were made known to the person to whom it turned over the ship for loading. No duty required it to keep watch of the servants employed by the stevedores, and warn each in turn, or to light the holds so that a person happening to be employed without its knowledge might not fall into a well-known hatchway, nor to cover the hatch for such person's protection. If any instruction, warning, or protection was needed, it should have been given by the stevedores. The hatch was not unusual, the absence of the bulkhead between it and hatch No. 2 was not unusual, and its open condition was not unusual, although it was neither necessary nor useful. The general holding seems to be that a stevedore will be presumed to know of the usual hatchways, and of the custom to leave the covers off while the ship is in port. If this be the law, there is nothing unusual about the bunker hatch in the present case which should except it from the rule just stated. But the further rule that the contractor's servants must look to him for the observance of duties mandatory between master and servant has full force in such a case, and, when a ship is turned over to such contractor for the purpose of loading, he, if anybody, should be responsible for the dangers that may arise from the open condition of the hatches. The cases relating to injuries by falling through hatchways are collected in The Saratoga (D. C.) 87 Fed. 349, although the conclusion reached in that case was not approved by the circuit court of appeals (36 C. C. A. 208, 94 Fed. 221). See, also, The J. W. Taylor (D. C.) 92 Fed. 193. Libel is dismissed.