15443.    Central of Georgia Railway Company *et al. v.* Lawley.

15480.    Central of Georgia Railway Company *et al. v.* Jones.

Jenkins, P. J. 1. "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Civil Code (1910), § 4420. "There is a clear distinction between the duty owing to such an invitee and the duty owing to a mere licensee. An owner owes to a licensee no duty as to the condition of the premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or willfully cause him harm; while to one invited he is under obligation for reasonable security for the purposes of the invitation." *Crossgrove* v. *Atlantic Coast Line R. Co.*, 30 *Ga. App.* 463 (1) (118 S. E. 695); *Smith* v. *Jewell Cotton Mill Co.*, 29 *Ga. App.* 461 (1) (116 S. E. 17).

2. While it is true that a railway company may, by deed from the owner, acquire a fee-simple title to the land traversed by its tracks, and such an absolute ownership of the soil will extend indefinitely upward so as to include the proprietorship of the air and space above such land, yet when it has acquired by condemnation, or by deed or contract, as it ordinarily does, only what is termed a "right of way," such right of way is construed as amounting only to an easement appurtenant to the land, however extensive its duration and however exclusive and paramount may be the rights conveyed for the necessary purposes intended. Such right of way will not be taken to extend to a height above the surface of the tracks greater than is needed for the safe and convenient passage of trains and their burdens of whatever nature, and for the maintenance of the necessary, usual, and customary transportation instrumentalities and facilities. *L. & N. R. Co.* v. *Willbanks*, 133

*Ga.* 15, 19, 20 (63 S. E. 86, 24 L. R. A. (N. S.) 374, 17 Ann. Cas. 860) ; *Gaston* v. *Gainesville Ry. Co.,* 120 *Ga.* 516, 517 (48 S. E. 188) ; *L. & N. R. Co.* v. *Maxey,* 139 *Ga.* 541, 542 (1) (77 S. E. 801) ; Citizens Telephone Co. *v.* Cincinnati R. Co. (192 Ky. 399; 233 S. W. 901, 18 A. L. R. 615, 617, 618, and extensive case note) ; 22 R. C. L. 863-865; 3 Bouvier's Law Dict. 3444; 4 Words & Phrases (N. S.), 391, 392; 19 C. J. 978, 979. See also Civil Code (1910), §§ 5233, 2585 (3, 4) ; *Ga. Granite Co.* v. *Venable,* 129 *Ga.* 341 (2), 345, 346 (58 S. E. 864). Thus, it is the general rule that a railway company, holding and occupying a right of way over land and over such portion of the space and air above as is necessary and proper in the use and enjoyment of its easement, has the rights and duties of an "occupier of land" with reference to invitees under section 4420 of the Civil Code, who may by its express or implied invitation come upon the premises so occupied. As to such, it is held to the measure of ordinary care; but upon premises beyond the right of way thus occupied the railway company is concerned neither as an owner nor as an occupant, and its liabilities in tort, to an alleged invitee upon premises on which it has no legal right, can not be measured under the statutory rule applicable to invitees.

(*a*) However, where, as here alleged, the railway company holding the right of way assumed ownership or control of the air space above its tracks by entering upon a written contract with an electric company, whereby the latter company was granted the right and privilege to "erect and maintain" described lines of power wire "across and over" the "right of way and tracks" of the railway company, with the right reserved to the railway company to control the manner of erection and the change of location or removal of the conductors, poles, or supports, then and under such circumstances the railway company will not be permitted to dispute its occupancy or control of the space thus utilized by the electric company as against one who enters thereupon by the invitation of the railway company holding the right of way.

3. "An allegation in pleading which contradicts anything of which the court must take judicial notice is absolutely nugatory and will be disregarded." *Rome Ry. & Lt. Co.* v. *Keel,* 3 *Ga. App.* 769 (2), 773 (60 S. E. 468). But, while the courts are required to take notice of the elementary natural laws of general application, and the characteristic and scientifically established general properties of material substances and forces, such as electricity, and for this general purpose the personal information of the tribunal may be supplemented by resort to encyclopedias or standard scientific treatises of recognized accuracy, it is nevertheless the rule that special effects and modes of operation of physical substances and forces, which are not commonly known, and an understanding as to the application of which to the particular case may require scientific or expert knowledge not possessed by the court and jury, or about which experts may differ, or which might conceivably vary in effects under peculiar or special conditions, as shown by the pleadings and evidence, will not be judicially recognized, but will be left to proper modes of proof. 1 Chamberlayne on Modern Law of Evidence, §§ 703, 705, 719, 720, 820, 848, 858, 886, 903; 2 Id. §§ 1968 (a), 1988. In the instant case neither the trial judge

nor this court can assume, as a matter of common and established knowledge, that electricity, especially an indirect or alternating current, as claimed by the plaintiffs (though it is not particularly alleged whether the current which caused the personal injuries sued for was direct or alternating), would not, under the high voltage stated, the peculiar arrangement of the wires, and the other facts alleged, jump for the distance of two feet or less to the heads of the injured persons, or draw a steel tape measure to such wires, in the manner charged. To assume the physical impossibility of such effects would require expert knowledge as to the laying of electric wires, the effects and dangers of various kinds of current and voltage, such as would fall within the domain of an electrical engineer or scientific expert and observer, and such as this court does not possess or assume. See Hoppe *v.* City of Winona, 113 Minn. 252 (129 N. W. 577; 33 L. R. A. (N. S.) 449, Ann. Cas. 1912 A, 247), where the probabilities of "brush" or "disruptive" discharges of electricity, and their likelihood of injuring persons in proximity to but not in actual contact with the wires, are considered, and a judgment for a plaintiff was affirmed.

4. "Under section 4414 of the Civil Code (1910) an employer is not liable for the negligence of an independent contractor, unless the employment or tortious acts constitute one of the exceptions stated in that section or in section 4415." *Malin* v. *City Council of Augusta,* 29 *Ga. App.* 393 (1) (115 S. E. 504). While it is true that, under subdivision 5 of the latter section, "the employer is liable for the negligence of the contractor, . . if the employer retains the right to direct or control the time and manner of executing the work, or interferes and assumes control, so as to create the relation of master and servant, or so that an injury results which is traceable to his interference" (*Huey* v. *City of Atlanta,* 8 *Ga. App.* 597, 70 S. E. 71), it is nevertheless the rule that, where the owner of premises surrenders the possession and control to an independent contractor, the contractor is in law chargeable with knowledge of any and all ordinary risks and hazards thereto appertaining, even though some peculiar arrangements of the premises might under certain conditions become sources of hidden danger. *Butler* v. *Lewman,* 115 *Ga.* 752 (42 S. E. 98). In such a case, in order for the owner or occupier of premises to be held liable to the workman of the contractor, the hazard must be latent or concealed, and the owner must have retained the custody and control of the premises. *Huey* v. *City of Atlanta,* supra.

(a) "It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference, on demurrer, will prevail in determining the rights of the parties." *Moore* v. *Seaboard Air-Line Ry. Co.,* 30 *Ga. App.* 466 (1) (118 S. E. 471); *Krueger* v. *MacDougald,* 148 *Ga.* 429 (1) (96 S. E. 867). Conclusions in conflict with pleaded facts are to be disregarded. *Moore* v. *Seaboard Air-Line Ry. Co.,* supra (4). If the petition be ambiguous or contradictory in its averments, not with reference to the form of action selected, as in *Stoddard* v. *Campbell,* 27 *Ga. App.* 363 (3) (108 S. E. 311), and cases cited, but as to facts essen-

tial to any right of recovery, ambiguities or contradictions must, on demurrer, be resolved against the pleader. While there are general averments charging that the defendants had never relinquished possession of the premises occupied by them including the place of injury, these allegations are demurred to specially, and it is manifest from other averments that the independent contractors employed by the county had possession of and entirely controlled the construction and progress of the cement bridge structure, and that the actual structure itself, on the top of which the injuries occurred, was in the sole possession and control of the contractors.

(*b*) But assuming that under the allegations of the petitions the defendants could be taken as having originally had any legal right of control over the particular air space where the injuries occurred, about 30 feet above the tracks, on a level with the height of the concrete piers and below the intersecting power wires, and even though it were possible to give effect to the general allegation or conclusion of the petitions that the defendants retained the custody and control of this air space about the piers where the workmen of the independent contractors employed by the county were engaged, the petitions are nevertheless defective and fail to set forth a cause of action, since they fail to allege that the wires had been erected and installed in an originally unsafe and improper manner, and since it appears that the danger actually and finally encountered by the workmen arose by reason of the conditions created by the workmen themselves during the progress of the work as directed by the independent contractors and the county, and especially since it does not appear that the defendants knew or ought to have anticipated that the independent contractors did not or would not know of the danger thus being brought about, and had failed or would fail to warn the injured workmen thereof, even if the averments as made could be taken as sufficiently alleging that the independent contractors had in fact failed to warn them of the particular danger causing the injury. Kiser *v.* Suppe, 133 Mo. App. 19 (112 S. W. 105); Cramblitt *v.* Percival Co. (158 N. W. 541, L. R. A. 1916C, 77); Texas Traction Co. *v.* George (Tex. Civ. App.), 149 S. W. 438; Proctor *v.* San Antonio Street Ry. Co.; 26 Tex. Civ. App. 148 (62 S. W. 939); The Auchenarden (D. C.); 100 Fed. 895, 896; Omaha Co. *v.* Hargadine (Neb.), 98 N. W. 1071; Humpton *v.* Unterkercher, 97 Iowa, 509 (66 N. W. 776); Moll on Independent Contractors, 400.

(*c*) Especially would the immediately preceding rule have application to the Lawley petition as amended (No. 15443), where it is alternatively alleged in separate counts that the electricity from the transmission wire jumped to a steel tape held by the injured workmen, or drew such tape to the wire, causing electrical contact, and where it does not appear that the defendants, by the proper exercise of any legal duty to the injured workmen, knew or should have anticipated that a recognized dangerous conductor of electricity such as this steel tape would be brought into close proximity to the power wires, and thus occasion a catastrophe, which, so far as shown by the petition, would not otherwise have happened. While the Jones petition (No. 15480) as amended added a second count, alleging that, "as petitioner passed directly under said wire, the said electricity, being thus attracted by the nearness of

petitioner to said wire, jumped and flashed from the wire to the *head* of petitioner, striking him prostrate instantly, that the effect of the electricity not only prostrated petitioner, but ran from his head down the left arm, and caught within the magnetic field of said electricity created by this high tension wire, directing the metal tape to itself," etc., the averments in the first count were similar to those in the Lawley petition; and, taking the allegations in the amended count as a whole, it is doubtful if it was not the intent of the pleader to rely upon the presence of the steel tape in the hand of the petitioner as the real, proximate, or actuating cause of the jumping of the electricity, if not directly to the tape, through the head and down the arm of the petitioner to the tape. But assuming that the Jones petition as amended might be distinguishable as indicated from that of Lawley, the former, if thus alleging a proximate cause independent of the steel tape, would nevertheless be controlled by the general rules stated above.

(d) Where a proposed bridge, later to become part of a public highway over a railroad right of way, was under construction by independent contractors of a third person other than the defendants, under conditions and circumstances such as are stated above, where, in anticipation of dangers to the public or to servants of the contractors, not then existing but which might later arise from the progress of the structure to a point where wires of the power company (originally properly strung) might cause dangers to the public or to such servants, the fact that at some time previous to the injury and homicide it was agreed by the power company with the railway company holding the right of way and the county employing the independent contractors that the wires should be raised at some later unstated time an additional height of ten feet, would not operate to change the rule, since there was no privity as to such contract between the person injured and the power company, such as would support or aid an action in tort by the servant of the contractors against the power company on account of such injuries and its failure to perform within a reasonable time. See *Fowler* v. *Athens City Waterworks Co.*, 83 *Ga.* 219, 222 (9 S. E. 673, 20 Am. St. Rep. 313, case note, 1 Ann. Cas. 753, 754).

5. For the reasons stated in the preceding divisions of the syllabus, it was error to overrule the general demurrers to the amended petitions.

*Judgments reversed. Bell, J., concurs. Stephens, J., concurs in the judgment.*

DECIDED JANUARY 17, 1925.

Damages; from city court of Albany—John R. Wilson, judge pro hac vice. February 14, 1924.

Application for certiorari was denied by the Supreme Court.

STATEMENT OF FACTS BY JENKINS, P. J.

These two cases, brought here by the defendants in the court below on the overruling of their general and special demurrers to the petitions, involve substantially the same allegations of fact and questions of law. The separate petitions of the respective plain-

tiffs for the recovery of damages from personal injuries are brought jointly against Central of Georgia Railway Company and Georgia-Alabama Power Company. The gist of the allegations, covering in each case some fifty pages of record, and of the demurrers, covering some sixty additional pages, is as follows: At the time of the injuries the plaintiff (in one case) and the plaintiff's deceased husband (in the other) were employed as servants by F. M. Dobson & Son, a partnership, in the laying of the concrete work for a bridge or overpass over the tracks and right of way of the Central of Georgia Railway Company, which bridge was to become a part of a public highway under construction by Dougherty County. Dobson & Son were independent contractors under contract and employment of the county; but the railway company had agreed to contribute to the county $4,000 as a part of the expense, and to furnish dirt and material from its right of way in the construction of the approaches to this bridge; the railway company being thus interested in the project on account of its elimination of a dangerous road-crossing on its tracks at another point. Georgia-Alabama Power Company owned and maintained three transmission wires and one middle or feed wire, being high tension wires each carrying 44,000 volts of electricity. These wires were erected and maintained at a height of approximately thirty feet above the tracks and right of way of the railway company, under a written contract between the companies, whereby it was agreed that the erection and maintenance of the power instrumentalities should be in accordance with the directions and specifications of the railway company; and the power company agreed to make, within twenty days after written notice, any required changes in location, and to hold the railway company harmless from any loss or damage on account of the erection, use, or maintenance of such lines. Some three months prior to the injuries the power company agreed with the railway company and Dougherty County to raise the wires an additional distance of one hundred feet above the said overpass and railway crossing, but this was not done until about one week after the injuries. On the day of the injuries, work on the overpass had reached a point where three concrete piers had been constructed "north and east of the tracks" of the railway, to a height of about eight or nine feet below the wires, and concrete flooring was being constructed on the same. Wooden boxes for holding cement had

been laid on the piers; and the injured workmen, each in one of these boxes, separated a distance of approximately twenty-one feet, holding a steel tape one sixteenth of an inch in thickness, were engaged in taking measurements under the supervision and order of one of their employers, the independent contractors. While they were so engaged their heads were raised to a point variously stated in the petitions as "approximately two feet" and as "about one foot or fourteen inches" from the lowest one of the said transmission wires; whereupon, as alternatively stated in the two counts of the Lawley petition and in the first count of the Jones petition, a flash of electricity leaped from the wire to the steel tape which the injured workmen were holding, or the tape was drawn upward to the wire, or as stated in the second count of the Jones petition, the flash leaped to the petitioner's head and down his arm to the tape, thus causing the death of one and the described serious injuries of the other. By reason of the facts stated, the injured persons, as employees of the independent contractors, are alleged to have been both express and implied invitees of the railway company and the power company. It is also alleged that both companies, through their general managers, chief engineers, and other authorized agents, kept in touch with and knew the progress of the concrete work on which the persons injured were engaged. The acts of negligence charged against each of the companies, variously expressed and reiterated, may be summarized as follows: in not furnishing the persons injured, as invitees, with a safe place to work; in not keeping the premises in a safe condition while they were present as invitees; in not raising the wires beyond a danger point within sixty days and within a reasonable time after knowledge of the facts; in not safely insulating the wires; in allowing said high voltage of electricity to remain within six or eight feet above said overpass, uninsulated and unguarded; and in expressly and impliedly inviting said employees of the independent contractors to said dangerous place.

The chief contentions of the defendants, under their general demurrers, are: (1) that neither the power company nor the railway company was the inviter of the injured persons at the actual place of the injuries; (2) that judicial notice should be taken that electricity could not jump from a wire the distance alleged in the petition to the heads of the injured workmen, or draw a steel tape

through that distance; (3) that the masters employing the injured persons, being independent contractors, are primarily responsible; and that neither of the defendants is liable, in the absence of any averment that the independent contractors did not have knowledge of the dangers incident to close proximity to the wires, so as to warn their servants thereof; or that the defendants had knowledge or notice that the masters had failed so to warn their servants; (4) that there was no privity of contract between either of the defendants and the injured persons, on which the plaintiffs can base their actions in tort, with reference to the alleged agreement of the power company with the railway company and Dougherty County to raise said wires a distance of ten feet; (5) that the dangers resulting in the injuries arose only from the progress of the work under changing and shifting conditions.

It is contended under the special demurrers, which attack as conclusions or as too meager or as irrelevant and immaterial most of the averments in the petitions: (1) that the allegations as to the injured workmen having been "expressly invited" to the place of injury by the defendants are mere conclusions, without ultimate facts showing such invitation; (2) that the particular parts of the rights of way of the respective defendants, to which it is contended they were expressly or impliedly invited, are not shown; (3) that while it is alleged that the railway company had not relinquished to the independent contractors any control or possession over its right of way, this is a mere conclusion; that the petition shows that all control over the right of way and the space above was not maintained, and it is not sufficiently alleged what control had been relinquished and what was retained; and that it is manifest that the defendants did not retain or exercise control over the top of the bridge where the injuries occurred.

The trial court overruled the general and special demurrers to the petitions as amended, and the defendants excepted.

*Pottle & Hofmayer, Pope & Bennet, Milner & Farkas,* for plaintiffs in error.

*Lippitt & Burt, Claude Payton,* contra.