41206, 41241. JOHNSTON, Trustee v. CLEMENT A. EVANS & COMPANY, INC.; and vice versa.

660

SUBMITTED MARCH 3, 1965—DECIDED MAY 11, 1965.

*Claude Hambrick,* for plaintiff in error.

*Hansell, Post, Brandon & Dorsey, Hugh M. Dorsey, Jr., J. Clifton Barlow, Jr.,* contra.

FRANKUM, Judge. The error assigned in the main bill of exceptions is on the judgment sustaining the defendant's general demurrer to the plaintiff's petition. As amended, the petition alleged the following material facts: Plaintiff is the duly appointed trustee in bankruptcy of the estate of William J. McAlpin, Jr., having been appointed on March 4, 1964. Between September 20, 1961, and September 26, 1961, McAlpin purchased for cash through the defendant, a stockbroker, shares of stock in six different corporations, giving to the defendant in exchange therefor five checks aggregating $377,443.28. At the time the checks were given and when presented for payment they were worthless and were not subsequently made good or honored. On September 29, 1961, defendant learned that McAlpin was insolvent, and for a period of four months thereafter the defendant and McAlpin conspired and colluded among themselves for the defendant to strip McAlpin "of all of his assets" and to conceal from other then existing creditors the fact that defendant had seized "all of the assets of" said McAlpin of any value, and thereby to hinder and delay other then existing creditors of McAlpin from collecting any part of the debts due them from the assets acquired by the defendant from McAlpin, the purpose of the conspiracy being to defraud existing creditors. The conspiracy did accomplish this purpose. A part of the conspiracy to hinder and delay the other creditors of McAlpin was to wilfully conceal from them during a four month period beginning September 29, 1961, the fact that the defendant had seized all of the valuable assets of McAlpin so as to prevent McAlpin being adjudicated a bankrupt and so as to keep the assets of McAlpin from the bankruptcy court. In furtherance of this conspiracy the defendant "through indirect methods" loaned McAlpin the approximate sum of $4,000 for the purpose of giving to McAlpin an appearance of financial responsibility, so as to satisfy some of his more pressing creditors who were threatening legal action against him. Defendant received as a

result of the aforesaid conspiracy money aggregating $104,703.92 from McAlpin in the following forms: a check on the Trust Company of Georgia in the amount of $11,000 on September 29, 1961; from the sale of 825 shares of Frito-Lay, Inc. stock, $30,718.97, on October 10, 1961; and from the sale by the Trust Company of Georgia of various other stocks owned by McAlpin, $62,971.05, between October 10, 1961, and November 7, 1961. McAlpin was adjudicated a bankrupt in the U.S. District Court for the Northern District of Georgia on January 9, 1963. Plaintiff, suing as trustee, prayed for a general judgment against the defendant in the amount of $104,703.92.

The defendant assigns error in the cross bill of exceptions on the overruling of its objections to the allowance of the plaintiff's amendment to his petition.

It is fundamental, of course, that on general demurrer a petition must be construed most strongly against the pleader and, if an inference unfavorable to the right of the plaintiff to recover is authorized by the petition, such an inference will prevail over other inferences or pleaded facts. *Krueger v. MacDougald*, 148 Ga. 429 (1) (96 SE 867); *Moore v. Seaboard A. L. R. Co.*, 30 Ga. App. 466 (1) (118 SE 471); *Wilkinson v. Rich's, Inc.*, 77 Ga. App. 239, 242 (1) (48 SE2d 552). It is also equally fundamental that specific facts alleged in support of conclusions drawn in the petition must reasonably tend to support the conclusions, and that such conclusions will be disregarded where the particular facts alleged contradict them or fail to support them. *Flynt v. Southern R. Co.*, 7 Ga. App. 313 (1) (66 SE 957); *Southern Wood Pres. Co. v. Resaca Lumber Co.*, 29 Ga. App. 501 (2) (116 SE 32); *Moore v. Seaboard A. L. R. Co.*, supra, headnote (3); *Central of Ga. R. Co. v. Lawley*, 33 Ga. App. 375, 377 (4a) (126 SE 273); *Waring v. John J. Thompson & Co.*, 76 Ga. App. 494, 496 (46 SE2d 364); *Green v. Spears*, 181 Ga. 486, 490 (182 SE 913). The specific acts alleged to have been committed by the defendant here were: the sale of the stock; the receipt from the insolvent debtor of $104,703.92, and the lending to the debtor of $4,000 to give to the debtor the appearance of solvency. All of these acts are alleged to have been done during the four month period from September 29, 1961. Strictly construed against the plaintiff, the petition shows that none of the

acts complained of were perpetrated after January 29, 1962, which was more than eleven months prior to the time the petition was filed and McAlpin was adjudicated a bankrupt. So no question arises as to the right of the plaintiff to recover because of an unlawful preference of a creditor by the bankrupt within four months immediately preceding the filing of the petition in bankruptcy, under the provisions of 11 U.S.C.A. § 96. Certainly, it is not ordinarily fraudulent for a creditor to endeavor to collect a debt owing it by an insolvent debtor, nor is it fraudulent to lend money to an insolvent debtor. Since it is not alleged that defendant knew of the insolvent condition of McAlpin until after the sale of the stock to him, that transaction could not be characterized as an act of fraud on the part of the defendant. It follows, therefore, that the allegations of fraud are wholly unsupported by the specific facts alleged in the petition and are insufficient to form the basis of the action here.

It is further alleged, however, that the acts of the defendant were done for the purpose of hindering and delaying existing creditors, and these allegations, if not controverted by other allegations, would show legal fraud. *Code* § 28-201 (2). However, applying the rules of law first stated above, and again construing the petition against the pleader, it does not appear that any of the acts charged against the defendant could have had that effect. We arrive at this conclusion because the petition is silent as to what became of the shares of stock sold by the defendant to McAlpin in the first instance. The sales were alleged to have been cash sales, payment therefor having been made by checks which were subsequently dishonored and not paid. Under such facts the defendant would have been authorized to treat the transaction as void and to have retrieved the stock. *Winton v. Butler*, 53 Ga. App. 696 (2) (186 SE 773). Instead, the only logical inference is that the defendant elected to treat the sale as a completed transaction and to become a creditor of McAlpin. Thus, the petition shows that the defendant delivered to McAlpin $377,443.28 worth of stock (it not being alleged that the stock involved was not reasonably worth the sales price), and after receiving worthless checks therefor and electing to become a creditor of McAlpin, succeeded in collecting

only $104,703.28 on that indebtedness. Since it is not alleged that McAlpin did not retain the stock or that he did not have it at the time he was adjudicated a bankrupt, an inference that he did have it and that the stock involved was a part of McAlpin's estate taken into possession by the trustee in bankruptcy is authorized. The conclusion that the defendant conspired to strip him of all of his assets and "seized all of the assets of said William J. McAlpin, Jr. of any value" is flatly contradicted by the reasonable inference to be drawn from the facts alleged. Therefore, it appears that, instead of stripping McAlpin of all of his assets, the defendant in fact enriched McAlpin's estate by approximately $277,000. This could not have hindered or delayed the other creditors of McAlpin and this is so even though as a part of this the defendant loaned McAlpin $4,000 after or during the process of collecting $104,703.92 from McAlpin.

Finally, the petition alleges that all of the acts of the defendant were done during a four month period from September 29, 1961. It is notable that no specific act is alleged to have been perpetrated after November, 1961. The creditors did not file a petition to place McAlpin in bankruptcy until January 7, 1963. It does not appear that the creditors attempted any action to collect the amounts owed them by McAlpin between January 29, 1962, and January 7, 1963. In view of the elapse of more than eleven months (more than 13 months from the date of any specific act on the part of the defendant alleged), the bare conclusion that the acts of the defendant had the effect of hindering and delaying McAlpin's creditors is unwarranted.

It follows that the trial court did not err in sustaining the general demurrer and in dismissing the amended petition.

*Judgment affirmed on main bill; cross bill dismissed. Bell, P. J., and Hall, J., concur.*