## BABCOCK BROTHERS LUMBER CO. *v.* JOHNSON.

1. Ordinary diligence requires a master to furnish to his servant appliances reasonably suited for the uses intended.
2. But the law does not exact of the master the extraordinary diligence which would be demanded if it were required that instrumentalities intended for one use should be safe and suitable for every unintended use to which they might be casually or unexpectedly applied.
3. If one is not chargeable with negligence because an appliance fails to serve a purpose not intended, neither is he chargeable with negligence because he has omitted to inspect so as to discover that it was not suited for such unexpected and unintended use.
4. A master can not send an employee to work in that which is known to be a trap, without being responsible for the resulting damage.
5. If the master requires a servant to use or knows that he will necessarily use, an appliance originally intended for another purpose, he will thereby be held responsible, as if the instrumentality had originally been intended for such new use.
6. Since pleadings are to be most strictly construed against the pleader, an allegation that the master knew or ought to have known of the defects and dangers is equivalent to a charge of implied notice rather than of actual knowledge.
7. The plaintiff, a minor, was employed to labor among rafters and open timber work. To steady or sustain himself he suddenly grasped an insecurely fastened brace, designed as a support for the roof, but not intended for a hand-hold. The brace fell, and he with it. There was no allegation that the brace was not reasonably safe for the purposes for which it was intended, nor that the defendant knew that it was insecure, or knew of any fact which would have suggested that it was dangerous; nor was it alleged that it knew that the plaintiff would necessarily or naturally rely upon the brace as a support. *Held*, that the petition did not charge actionable negligence, or set out a cause of action against the defendant.

Argued June 17,—Decided August 12, 1904.

Action for damages.    Before Judge Sheffield.    Miller superior court.    December 21, 1903.

The petition alleges, that the plaintiff was employed by the defendant as a laborer, and was engaged in doing carpenter work among the rafters and open timbers of the defendant's boiler room; that having been directed to assist in putting in a timber, and it having been fastened in place, he attempted to pass along a "plate" or beam, in order that he might reach the place where the other end of the timber was to be fastened; that, in order to support himself in passing, as it was necessary for him to do in order to perform the work in which he was engaged, he caught hold of a brace, one end of which rested on a beam running thence diagonally to the roof; that this brace appeared to be securely fastened, and he believed it to be securely fastened, but it was insecurely laid in place, and when he caught hold of it for the purpose of supporting himself, as it was necessary for him to do in passing along the beam, it fell, and he fell with it, and thereby sustained injuries described; that he did not know, and by the exercise of ordinary care could not have discovered, the condition of the brace; that it was a part of the permanent structure, and had been left in this condition about two years; that the defendant was negligent in allowing the brace to remain in place, apparently securely fastened, when it was not, and in allowing and directing him to work upon the beam to which it was supposed to be fastened, without informing or warning him of its unsafe condition; that the defendant was under the duty of providing him a safe place in which to work, and to make reasonable provisions for his protection, and, by the exercise of ordinary care, could have rendered the place safe; that he was inexperienced and under the age of eighteen years; that the defendant knew or ought to have known of the defects and dangers mentioned above, and, although under the duty of warning him, did not do so; and that he was in the exercise of due care.    The defendant demurred, on the ground that the petition did not set out a cause of action; and to the overruling of its demurrer it excepted.    In its brief it contends that no cause of action was set forth, because there was no allegation that the brace was not reasonably suited to the use for which it was intended.

*Russell & Fleming* and *Bush & Stapleton*, for plaintiff in error. *Arthur Gray Powell*, contra.

LAMAR, J. (After stating the foregoing facts.) The defendant was altering the roof to its boiler house. The plaintiff (a minor and inexperienced), while working among the rafters, fastened one end of a piece of timber, and, in order to reach the point where the other end had to be nailed, attempted to walk along a narrow beam. In doing so he came to a brace which ran from the beam diagonally to the roof. The brace appeared to be fastened. In fact it was insecure. In endeavoring to pass around it he caught hold of the brace. It fell, and he with it. In the suit for the resulting personal injuries, it was charged that the master was negligent in maintaining the brace in this insecure condition, and in ordering the plaintiff to this work without warning him of the danger, or notifying him that the timber was loose. It is alleged that the plaintiff was ignorant of the condition of the brace, and by the exercise of ordinary care could not have discovered it, but that the company knew or ought to have known of the dangers and defects mentioned.

1–5. The master is responsible for the consequences of his negligence. But he is not an insurer; nor is he liable absolutely and at all events for every injury which is sustained by his employee. The master is not bound to exercise that extraordinary diligence which necessarily would be demanded if he were obliged to make every instrumentality safe for any and every use to which it might suddenly and unexpectedly be applied. His duty and diligence are primarily to be decided by considering whether he has furnished an appliance or instrumentality reasonably safe and suitable for the purpose for which it is intended or might naturally be expected to be used. This duty may extend beyond the mere furnishing of the article, and involve the obligation of inspection and maintenance. So that in such cases he may be liable not only for injuries occasioned by defects of which he knew, but by those of which he ought to have learned in making the required inspection. In the performance of the absolute duty to furnish an employee with suitable appliances, and to warn him of dangers connected with the employment, the master can not escape from responsibilities by negligent ignorance. Civil Code, § 2611. But the liability then springs out

of the duty, and applies where he is under an obligation with reference to the instrumentality being used by the party who is injured.   Where there is no duty to furnish, there is no responsibility for failure to furnish.   Nor is there, in such case, any obligation to inspect in order to see whether it is fit for the unintended use.

Here, from the petition and the diagram attached to it, it is perfectly evident that the brace was not intended as a hand-hold, but only to assist in supporting the roof.   If, in consequence of the brace being unfastened, the roof had fallen and injured the plaintiff, or persons lawfully in the house, it would have been competent to show that the owner had not furnished a proper instrumentality, or was negligent in its maintenance, or was negligent in failing to know of the insecurity.   All these facts would have been admissible in determining whether he had performed his duty to those who had a right to rely on his furnishing a safe roof.   The brace was intended to support a roof.   It must be kept safe for that purpose.   But when it was suddenly applied to another use, and proved unsuited to that use, the owner can not be held responsible for its failure to serve the new purpose to which it was unexpectedly put.   So to hold would be to rule that he was in the first instance bound to exercise extraordinary diligence.   If, therefore, the brace was not intended as a hand-hold, the company can not be charged with negligence because, while gravity or pressure enabled it to support the roof without a fastening, it failed to carry the weight of a man pulling at another angle.   And if, relatively to the plaintiff, there was no duty to furnish it as a hand-hold, there was no negligence in failing for two years to inspect, to see whether it was suited as a hand-hold. "The mere fact that an appliance happens to be placed where it can be used for the performance of the work which the injured servant undertook to do with it does not warrant the inference that the master intended that he should use it as he did, or the inference that he was in fault in not knowing that he was likely to do so.   Any other rule would involve the consequence that every master who leaves any implement upon his premises, which his servants can not safely use for every purpose which suits their convenience, sets a trap for them."   1 Labatt's Master & Servant, § 26.   The authorities on which the defendant in error relies do

not answer *East Tenn. R. Co.* v. *Reynolds*, 93 *Ga.* 570, where it was held that the master was not responsible to one who was injured by reason of a defect in a cross-tie, where the cross-tie was being used for a purpose not intended. See *Hamilton* v. *R. & D. R. Co.*, 83 *Ga.* 346. Similar rulings have been made in cases almost identical with that at bar; for example, where a cornice fell when subjected to the unexpected use of supporting painters; or a widow mullion fell when an employee rested thereon for the purpose of putting in a pane of glass; or where one grasped a slat not intended as a hand-hold; or leaned against a lath intended to steady the supports of a scaffold; or stepped through the cloth covering of a sloping conveyor; or lost his balance in grasping a wooden "horse" used in hauling up buckets; and in other similar cases referred to in 1 Labatt's Master & Servant, § 26, p. 60, n. 2. A case much in point is *Quirouet* v. *Ala. Great Southern R. Co.*, 111 *Ga.* 317, where a round standard was placed in a square socket. It was intended to prevent pipes from rolling off a car, but not intended for the purpose of being used by employees in mounting the car.

6. Nor is the allegation that the company "knew or ought to have known of the defects and dangers mentioned above," by itself, sufficient to save the case. For, construing the petition as it must be construed,—most strongly against the pleader,—it does not charge actual knowledge, but only amounts to the alternative allegation of implied notice. And even in that respect it states no fact, but seems rather to be a conclusion resulting from the further allegation that the brace had remained unfastened for more than two years. Compare *Allen* v. *Augusta Factory*, 82 *Ga.* 79. At most the petition can be treated only as charging implied notice. Southern Ry. Co. *v.* Bunt (Ala.), 32 Sou. 508. Where the master is under an absolute duty to furnish appliances suitable for the use for which they are intended, or to warn of the dangers attendant upon the employment, he can not hide behind the want of knowledge which he should have acquired. In such cases ignorance itself may be negligence. Civil Code, § 2611. But the authorities are not uniform in declaring when implied notice will be sufficient to charge one with negligence. All recognize that there may be instances in which only actual knowledge will serve to impose a liability. Ignorantly to send

one into danger may amount to a want of forethought. Knowingly to send one into danger may amount to recklessness, wantonness, or even criminality. The difference between actual knowledge and constructive notice would certainly make a difference in the moral responsibility of the actor. Whether it would make a difference in the legal' responsibility would depend in part upon his duty, at the time, in reference to the care, maintenance, and inspection of the instrumentality causing the peril. That, in turn, would in part depend upon considering the use for which it was intended, and upon whether the master knew that the servant must, or probably would, divert the appliance to a use not originally intended. For if the master directs an appliance to be used, or knows that it will reasonably be used, for some purpose other than that for which it was originally intended, he puts it in the same position as if he had originally furnished it for that purpose. But the fact that it has been diverted to a new use will not render him liable if that diversion occurred without his knowledge or consent.

The master, therefore, not being chargeable by law with the knowledge of the dangers which may arise from its application to a new use, does not come within the rule as to implied notice. Nor does the law say that he ought to have known that the brace was unsuited as a hand-hold. It takes some new fact to raise a new duty, and impose a new liability for the damage occasioned by the new use. That new fact is knowledge, not only of the condition of the brace, but that the plaintiff would use it in the prosecution of his work. If, in ignorance of the danger, the master sends an employee to labor, his responsibility is measured by the application of the rules relating to the use of appliances in a way and for a purpose not intended. But if he knows of the danger,— knows that there is a trap,— and yet sends the employee unwittingly into the trap, he is not only morally guilty, but civilly liable. And of course the master might be liable even in those cases where he is not morally guilty, for he might be chargeable if his agent had knowledge of the trap. And even where there was no actual knowledge of the danger, yet if there was actual knowledge of facts suggesting the existence of danger, and leading a prudent man to make an inspection, he could not fail to follow up the inquiry suggested

by what he actually knew, and then rely on his negligent ignorance. But in the present case the plaintiff relies merely upon the implied knowledge arising from the lapse of time, and there is nothing to indicate that during that time any fact had occurred which suggested an inquiry, or put the master upon any more notice than that had by the owner of every piece of property having rafters, braces, beams, or supports to a roof. The petition fails to allege that the company knew of the defect, or knew of any fact which made it incumbent on it to inspect. Nor is it alleged that it knew that the plaintiff would necessarily go along the beam, or would necessarily rely upon the brace as a support. For while it appears that when he started the rafter he necessarily caught hold of the brace, it does not appear that he might not have reached the point to which he was bound by using the ladder or other means by which he had originally ascended to the open timber work.

That the allegation that the master "ought to have known of the defect" is not sufficient to charge him with negligence under such circumstances was involved in the cases cited from 1 Labatt's Master & Servant, 60. And so, too, in *Quirouet* v. *Ala. Great Southern R. Co.*, cited above, it appears from the original record that the petition averred that the "defendant knew or was in duty bound to know" of the defects in the standard. In Morrison v. Fiber Co., 70 N. H. 406, the plaintiff was working near a conveyor, which was covered with canvas. "The defendants knew how this part of their elevator was covered, but did not tell the plaintiff that the covering was canvas." He thought it was covered with a plank, and, while moving a heavy object, stepped upon the canvas and was injured. In the course of the opinion the court says: "The case does not show that the defendants either intended for the plaintiff to use this elevator as he did, or knew, or were in fault in not knowing, that he was likely to do so. A person is not in fault for not knowing particular facts, unless circumstances exist which would put a man of average prudence upon inquiry. . . The plaintiff's situation would have been no different if the defendants . . had set him to paint the mill, and he had hung his stage from a gutter which they knew was insecurely fastened, but which he supposed was secure. . . Although it is a master's duty to set no trap for his

servant, leaving a gutter insecurely fastened would not amount to that, unless they intended for him to hang his stage from it, or knew, or were in fault for not knowing, that he was likely to do so." " The mere fact that the gutter was where he could use it for that purpose would neither be evidence that it was put there for him to hang his stage from, nor that they ought to have known that he was likely to do so." Of course if the master knew that it was insecure, and knew that the plaintiff would use it as a support, and, without warning, allowed him to proceed, a very different question would have been presented. That would have been equivalent to recklessly sending him into a trap. The allegation that the plaintiff was inexperienced and a minor does not alter the legal principles involved. The duty to warn is not limited to minors, but grows out of the relation of master and servant, the obligation to furnish instrumentalities safe for the use for which they are intended, the master's knowledge or duty to know, and the servant's ignorance of the existence of the danger. There is no allegation that the plaintiff was wanting in physical or mental capacity to do the work, nor does it appear that he was injured in any way by reason of his youth or inexperience, but solely because of the fact that he suddenly and unexpectedly put the brace to a use for which it had not been furnished. " A minor old enough to understand the risks of a dangerous employment must be deemed to have assumed those risks to the same extent as though he were an adult." Where " his physical and mental powers have virtually attained their full maturity, his rights and disabilities should be tested by the same standards as if he were actually over twenty-one." This principle has been applied where he was injured " by a defect in an appliance, where the existence of that defect does not imply negligence on the master's part." 1 Labatt's Master & Servant, § 291, citing, among other cases, De Graff v. N. Y. Central R. Co., 76 N. Y. 125. See also *Sims* v. *East & West R. Co.*, 84 *Ga.* 152; *Evans* v. *Josephine Mills*, 119 *Ga.* 454. The petition does not make out a case of actionable negligence against the defendant, and the demurrer should have been sustained.

Cited by plaintiff in error: 90 *Ga.* 491; 93 *Ga.* 570; 83 *Ga.* 491; 111 *Ga.* 315; 118 *Ga.* 795; 102 *Ga.* 586; 97 Ala. 220 98 Mass. 572; 160 Mass. 457; 165 Mass. 443; 70 N. H. 406

18 L. R. A. 124 ;   32 L. R. A. 435 ;   29 Cal. 243 ;   14 Am. Neg. Rep. 72, 225 ;     77 Hun. 74 ;     110 Mo. 312 ;     59 N. J. L. 23.

Cited by defendant in error :     118 *Ga.* 581 ;   111 *Ga.* 149 ; 97 *Ga.* 719 ; 83 *Ga.* 709 ; 155 Mass. 584 ; 4 L. R. A. 420 ;   117 N. Y. 566 ; 153 Mass. 356 ; 105 Ind. 29 ; 162 Ill. 447 ; 7 Houst. 556 ; 44 Cal. 187 ; 25 Ala. 659 ;   92 *Ga.* 95 ;   94 *Ga.* 107 ;   50 Mich. 70 ;   102 Mo. 213 ;   92 *Ga.* 399 ;   71 *Ga.* 407 (17) ;   116 *Ga.* 427 ; 72 Pac. 289 ; 204 Pa. 41 ;   93 N. W. 177 ; 31 W. Va. 146 ;   9 Fed. 861 ; 84 Mich. 676 ; 105 Ind. 155 ; 66 N. E. 694 ; 1 Labatt's Master & Servant, §§ 28, 440 (c), pp. 273, 298, 1247, 65 ; Bailey's Master & Servant, 122.

*Judgment reversed.    All the Justices concur.*