2784.　HUEY, by next friend, *v.* CITY OF ATLANTA.

1. The operation of a system of water-works is not such a governmental function as that a city is not liable for injuries resulting through negligence in the maintenance thereof. While this business is quasi-public, it is not essentially governmental.

2. Where the proprietor or possessor of land, houses, structures, or other like tliings, employs an independent contractor to do work thereon, but docs not surrender the custody of the premises or of the structure or other thing, as the case may be, to the independent contractor, and a servant of the independent contractor, coming and attempting to do the designated work in a manner reasonably to be anticipated, is injured by some latent danger in the conditions surrounding the premises, structure, or other thing, of which the proprietor has actual or constructive knowledge, and of which the workman has no knowledge, actual or constructive, the failure of the proprietor of the premises to warn him of the danger or to inform him of the conditions is a wrong, and such a breach of duty as will give rise to a cause of action in favor of the injured workman against the proprietor for the injury inflicted.

3. If the proprietor of premises on which machinery is located employs an independent contractor to repair a particular machine, and the proprietor knows, or by the exercise of ordinary care should know, not only that the machine is out of repair, but that there is some extraordinary latent danger or perilous condition attaching upon the service, and the independent contractor sends a servant to make the repairs (the servant being actually or constructively ignorant of the extraordinary danger), it is the duty of the proprietor of the premises to warn the servant thereof; and for a breach of this duty, resulting in injury to the servant, the latter has a cause of action against the proprietor of the premises.

　　　　　DECIDED JANUARY 24, 1911.

Action for damages; from city court of Atlanta—Judge Reid. May 28, 1910.

The action was brought against the City of Atlanta by the minor children of one Huey, to recover damages for his death.　To summarize the contents of the petition: It is alleged, in substance, that Huey was an agent or servant of the Withers Foundry and Machine Works, a corporation employed by the city to make certain repairs upon an engine used in the operation of its system of water-works.　The arrangement in the defendant's

plant was such that in order to get into position to do the work, Huey had to place his head underneath the driving rod of one of the engines, and between the driving rod and certain portions of a platform, thus forming a kind of frame through which he was working. The engines were so arranged that while one of the driving rods was on dead center, the other was a quarter stroke above center. They were in this position at the time of the transaction in question, and Huey was working with his head and neck under the driving rod that was above the center. While he was in this position, the driving rod above him, by a start of the engine, moved, and chopped off his head—the rod and the surface beneath operating as if they were a pair of shears. The petition is somewhat duplicitous in stating the cause of the engine's moving. It is first alleged that what is known as jacket steam had leaked into the engine and accumulated in such quantity as to cause the movement; it being explained that there was a leak in the engine which allowed steam to accumulate, notwithstanding that the boiler itself had apparently been cut off by a valve. It is also alleged that the movement of the engine had been caused by a leak in what is known as the gate valve, which allowed water (water from the stand-pipe or pipe lines we presume) to leak into the engine and create a pressure; that bleed pipes had been arranged so that this water could escape, but that the cocks on them had been shut so that the pressure of water was allowed to accumulate. It is alleged that the defendant was negligent in allowing these leaks by reason of which the jacket steam accumulated (and it is stated that they had existed for some eight months) ; also, that it was negligent in allowing the leak of water through the gate valve and the accumulation of pressure through this source, and in not seeing that the bleed pipes were left open. And it is further alleged that these conditions were in existence and known to the defendant, and that Huey had been allowed to go to work in the dangerous position necessary to accomplish the repairs without being given any warning of the danger, which was unknown to him. · Demurrers both general and special were filed ; the court did not pass upon the special demurrers, but sustained the general demurrer, holding that no cause of action was set out.

*J. D. Kilpatrick,* for plaintiff.

*J. L. Mayson, W. D. Ellis Jr.,* for defendant.

POWELL, J. (After stating the foregoing facts.) 1. The first contention of the defendant is that, being a city, it is not liable for damages ensuing through the negligence of its employees in the operation of its system of water-works. Of course, it is well recognized that so far as its purely governmental functions are concerned,—that is, so far as it undertakes to perform for the State any of those duties which the State should perform, either directly or indirectly, for its citizenry,—such as the maintenance of the public morality, peace, safety and health, a city has the same immunity from liability that the State itself possesses. On the other hand, as to their other corporate functions, cities are liable just as other corporations are for negligence. Able counsel for the city do not cite a Georgia case in support of their contention that the city is not liable for damages resulting from negligence committed in connection with the maintenance of its system of water-works, and, as the practically unbroken current of American authority is that municipalities are liable for such injuries, we see no reason for making an exception in this State. Even as to the maintenance of streets and highways, which approaches much closer to a governmental function than does the maintenance of water-works, they are liable for negligence. Dillon on Municipal Corporations (4th ed.), § 985, states the rule that "municipal corporations are liable for the improper management and use of their property to the same extent and in the same manner as private corporations and natural persons;" and, among other cases, cites *Brown* v. *Atlanta, 66 Ga.* 71, a case involving the liability of the City of Atlanta for a tort committed by its employees in the operation of its water-works. See also *City Council of Augusta* v. *Mackey,* 113 *Ga.* 64 (38 S. E. 339). The line of demarcation between the liability and the non-liability of a municipal corporation for negligence in connection with its system of water-works is to be seen in the annotations to the case of City of Winona *v.* Botzet, as reported in 23 L. R. A. (N. S.) 204 (169 Fed. 34, 94 C. C. A. 563).

2. We are led to believe, however, that the learned trial judge's ruling as to the city's non-liability was not based upon the ground of any special exemption arising out of its governmental function, but that he took the view that Huey, being a servant of the Withers Foundry and Machine Works, must look to his employer, and not to the city for indemnity. In support of this view,

counsel for the city cite the section of the code (Civil Code of 1895, § 3818) and a long line of decisions which declare that the proprietor of the premises generally is not responsible for torts committed by a contractor doing work for him, where the contractor exercises an independent business which is not subject to the direction and control of the proprietor, and contend that since the Withers Foundry and Machine Works was an independent contractor, and Huey was an employee of the contractor, the city is not liable in this transaction. This case, if we understand it, does not fall within the doctrine announced in the section of the code just referred to and the cases cited. That code section and those decisions relate to cases where there has been a breach of duty toward the servant by the independent contractor as master,—in other words, where the action is predicated of some negligence of the independent contractor. They are not applicable to cases such as this, involving the distinct and independent negligence of the owner or proprietor of the premises. In sum and substance, the code sections and the decisions referred to declare that an independent contractor is not usually such an agent of the person employing him as to make the latter responsible for the torts of the former; it is their object to declare a limitation upon the application of the doctrine of respondeat superior, and not to exempt any one from responsibility for his own personal negligence. They leave the rule of liability in cases where the proprietor and an independent contractor both figure in the transaction such as that each party is responsible for his own neglects and wrongs, and not.for those of the other. The question in each case is, whose negligence is involved; who has violated the particular duty? In those cases where the cause of action is predicated of a breach of one of those duties imposed upon the master by reason of the contract of employment, the independent contractor, being the master, is the one to whom the injured person must look for damages; and, unless the case falls within one of the exceptions stated in the code section, the person employing the independent contractor is not responsible for injuries resulting to the latter's servant. Then there is a class of cases (and we consider this case as being within that class) where the proprietor of the premises is, by reason of wrongs for which he is the author, guilty of negligence,—wrongful in some cases as against both the independent

contractor and such employees as he may send to do the work. The great leading case in which this doctrine is expounded, and which has so often been cited approvingly by courts both English and American, is Indermaur *v.* Dames, L. R. 1 C. P. 274 (35 L. J. C. P. 184, 2 C. P. 311, 36 L. J. C. P. 181). This case is very generally considered as the leading case upon all phases of the doctrine which declares that the law imposes upon the occupiers of buildings, and persons having control of other structures intended for human occupancy, the duty of keeping them in ordinarily safe condition, to the end that such persons as may be expected lawfully to come into or upon them may not be subjected to bodily injury. It declares the great doctrine of the landowner's liability to all persons upon the premises by the actual or implied consent of the landowner— the word "landowner" being used in the sense of the possessor of the land, house, or structure in question. It is a doctrine which, as Sir Frederick Pollock says in his work on Torts (8th ed.), 508, "goes beyond the common doctrine of responsibility for servants, for the occupier can not discharge himself by employing an independent contractor for the maintenance and repair of the structure, however careful he may be in the choice of that contractor. Thus the duty is described as being impersonal rather than personal. Personal diligence on the part of the occupier and his servants is immaterial. The structure has to be in a reasonably safe condition, so far as the exercise of reasonable care and skill can make it so." Now in the case of Indermaur *v.* Dames, supra, the plaintiff was a journeyman gas-fitter, employed to examine and test some new burners which had been supplied by his employer for use in the defendant's sugar-refinery. While on an upper floor of the building, he fell through an unfenced shaft, which was used in working hours for raising and lowering sugar. The court held that, on the admitted facts, the plaintiff was in the building as "a person on lawful business, in the course of fulfilling a contract in which both the plaintiff and the defendant had an interest, and not upon bare permission." The court, therefore, stated that under the facts of the case they were called upon to announce the law "as to the duty of the occupier of a building with reference to persons resorting thereto in the course of business, upon his invitation, express or implied." The decision goes on to say that the common case in which this doctrine is involved is that of a customer

in a shop, but that this is only one of a general class, that it includes all persons who go on others' premises, not as mere volunteers, or licensees, but upon business which concerns the occupier, and upon his invitation, express or implied. The court announced the doctrine thus: "And, with respect to such a visitor at least, we consider it settled law, that he, using reasonable care on his part for his own safety, is entitled to expect that the occupier shall on his part use reasonable care to prevent damage from unusual danger, which he knows or ought to know; and that, where there is evidence of neglect, the question whether such reasonable care has been taken, by notice, lighting, guarding, or otherwise, and whether there was contributory negligence in the sufferer, must be determined by a jury as a matter of fact." In Pollock on Torts (8th ed.), 507 et seq., the doctrine is fully discussed, and a number of cases are cited, many of which involve instances of where liability has been recognized in favor of the servant of a third person, sent upon the premises of the landowner and injured by some latent, dangerous condition encountered there. As the learned writer whose work has just been cited says, "The possession of any structure to which human beings are intended to commit themselves or their property, animate or inanimate, entails this duty on the occupier, or rather the controller. It extends to gangways or staging in a dock, as we have just seen; to a temporary stand put up for seeing a race or the like; to carriages travelling on a railway or road, or in which goods are despatched; to ships; to wharves, in respect of the safety of the frontage for ships moored at or approaching the wharf; and to market-places."

There are cases in which the question as to who is the occupier of the premises, within the purview of this rule, arises. Such a case was that of *Butler* v. *Lewman*, 115 *Ga.* 752 (42 S. E. 98). In that case a fire had rendered the building unfit for occupancy, and the owners had surrendered complete control over it to a firm of contractors who had undertaken its restoration. As the court points out in that case, the owners of the building had no control whatever over it, and had no power or right to license anybody to enter; that right and prerogative having been fully transferred to the contractors. An employee of a subcontractor was injured by falling down an elevator shaft, improperly protected and lighted. It was held that the original contractor, he who had control over

the building, was liable, notwithstanding that the plaintiff was not his servant, but was a servant of the subcontractor; but that the landowner who had surrendered his possession and proprietorship was not liable. In the present case there is nothing to indicate that the city had in any wise surrendered the proprietorship and control over the premises on which the pumping station was located, or over the pump itself, and the allegations of the petition show that it had not done so. The plaintiff, as was said of the workman in the case of Indermaur v. Dames, quoted above, was upon the premises of the city upon a lawful mission and upon its implied invitation. According to the allegations of the petition, it allowed him to enter upon the doing of the work which it was to be expected that he or some other servant of the Withers Foundry and Machine Works would enter upon, and allowed him to place his head within the very man-trap that existed by reason of the latent defect in its machinery, without warning him. This was the defendant's negligence; negligence for which it is liable to the injured workman, and for which, under the old law, which allowed a master to recover for injury to a servant, they would also have been liable to the Withers Foundry and Machine Works. While the case of Indermaur v. Dames, which was decided in 1866, is regarded as the leading case on this subject, practically the same proposition was made and decided by the Supreme Court of Alabama in 1854, in the case of Perry v. Marsh, 25 Ala. 659. In that case (which, too, by the way, is a much cited precedent) the injury was received by one who was repairing an engine. It is said in that case: "If a man employ me to repair an engine under his building, and knows the building is in a dangerous condition, and I am ignorant of the peril I incur in doing the job, the suppression of such a fact, when the very undertaking of the work implied a trust and confidence on my part that no such danger or peril is incurred, would clearly make the person employing me responsible for the consequences of his act. 'His very silence,' to use the language of Judge Story, 'becomes expressive of trust and confidence equivalent to an affirmative.' In this view of the case, the plaintiff in error committed a fraud upon the defendant, and a damage to the defendant resulted from the fraud. This is all that is necessary to support the action. Fraud and damage coupled together will entitle the injured party to relief in any court of

justice." The situation in that case was that the plaintiff, Marsh, had hired a slave to one Sadler, and Sadler, through an employee of his, named Coxe, was doing some work for Perry, the defendant: and the slave was killed by concealed defects in Perry's building, and Marsh was allowed to recover.

3. The last point that we deem it necessary to consider is that Huey was, in the case at bar, engaged to repair a defect in the very engine that killed him. We have no inclination to disagree in any wise with the reasoning or ruling in the case of *Dartmouth Spinning Co.* v. *Achord,* 84 *Ga.* 14 (10 S. E. 449, 6 L. R. A. 190), to the effect that one who is employed to repair defective machinery can not complain because safe machinery is not furnished him; and it is possible that when, by reason of special demurrers or otherwise, the plaintiff is required to make his allegations more definite, or when the proof comes in, it will appear that the defect which resulted in this workman's death was the very defect he was sent to repair. If so, the doctrine of the case just cited will be fully applicable. We can not infer that this was the defect that injured him, as the petition alleges categorically that he was not in any wise informed of the existence of the defective condition through which his death resulted. The case, as made by the declaration, rather falls within the principle announced in *Green* v. *Babcock Lumber Co.,* 130 *Ga.* 469 (60 S. E. 1062), and *Lucas* v. *Southern Ry. Co.,* 1 *Ga. App.* 810 (57 S. E. 1041), that "if a master sends a servant, employed to repair machinery, to repair a particular machine, and knows, or in the exercise of ordinary care should know, not only that the machine is out of repair, but that there is some latent danger or unusually perilous condition attendant upon the service, and which is unknown to the servant, and could not be known to him by the use of ordinary care, and as to which he has not equal means of knowing with the master, the latter is under duty to warn the servant thereof." While that was an action of a servant against his master, still the rationale of the doctrine there announced is applicable here.

The petition in the present case, as against general demurrer, presents an instance of a person who, being lawfully upon another's premises for a designated purpose, and who, having occupied the position on these premises naturally and normally to be anticipated by the proprietor of the premises, has been injured by a dangerous

condition existing thereon; of which the proprietor of the premises had knowledge and of which the visitor did not have knowledge, actual or constructive. In such a case the duty to warn exists, and it exists independently of any contract raising the duty; it is one of those duties imposed by the social compact defining man's elementary duties and liabilities to his every fellow man—a duty recognized as a corollary to or an extension of the maxim "Sic utere tuo ut alienum non lædas." The real act of negligence in this case, the one that goes to the very gist of the case, is the one that charges that the defendant, knowing of the dangerous condition, allowed this human being to place his head within the very jaws, so to speak, of this thing which stood ready to bite his head off and to snap his life out. As against this allegation of negligence and the alleged facts upon which it is supported, it is plain to our minds that the court erred in sustaining the general demurrer.

*Judgment reversed.*