17979. CULBREATH *v.* KUTZ COMPANY, *et al.*

1. Where an instrumentality is being put to a purpose or use not intended, the owner or person in control thereof is not liable for injuries occasioned thereby, unless he had actual knowledge that it was defective and unsuited for that purpose, and also knew or should have anticipated that it would be diverted to the foreign use.

(*a*) The court will take judicial cognizance of the fact that windows of a building are ordinarily intended to be used for the purpose of admitting light and air, and perhaps in some cases, for ornament or symmetry; and in a suit by an invitee, as a window-cleaner, against the owner or occupier for damages from alleged defects in a window, allegations that it was customary for workmen of the plaintiff's trade to use windows as a support for their weight while washing them from the outside will not alone be sufficient to show that a window should be so constructed or maintained as to be suitable for such use.

Evidence, 23 C. J. p. 59, n. 22; p. 174, n. 31.

Negligence, 29 Cyc. p. 465, n. 21; p. 518, n. 22; p. 519, n. 23, 24; p. 565, n. 75; p. 567, n. 88; p. 576, n. 56; p. 579, n. 80; p. 635, n. 68.

Pleading, 31 Cyc. p. 50, n. 69; p. 54, n. 8; p. 289, n. 60.

(*b*) In such a case an averment which in effect merely alleges that, in view of such custom of workmen, the defendants when constructing the building knew that the window would be put to such use, imputes to the defendants constructive notice only; and in the absence of anything further to show any duty on the part of the defendants to have known or anticipated the plaintiff's act, a charge of constructive notice is not sufficient to form the basis of an averment that the defendants were negligent either in not constructing and maintaining the window suitably to the foreign use to which the plaintiff put it, or in not inspecting it and warning him of any defects therein relatively to such use.

(*c*) The petition in this case failed to show negligence by any of the defendants with respect to the plaintiff.

2. One who knowingly and voluntarily takes a risk of injury to his person, the danger of which is so obvious that no person of ordinary prudence would subject himself thereto, can not hold another liable for damages from injuries thus occasioned.

3. In a suit against the owners and the tenant of a building to recover damages for injuries sustained by the plaintiff, a window-washer, in falling to the ground while washing from the outside a window of the fourth story, where it appears from the allegations of the petition that the plaintiff fell because, without testing or examining the strength of the window for that purpose, he voluntarily chose to support himself by holding to parts thereof which were insecure and inadequate for such use, *held*, the petition affirmatively shows such negligence or want of care on the part of the plaintiff as to bar a recovery.

4. The petition failed to set forth a cause of action, and the general demurrers were properly sustained.

DECIDED NOVEMBER 21, 1927.

Action for damages; from city court of Atlanta—Judge Dorsey. December 24, 1926.

Philip Culbreath, a window-washer employed by the National Window Cleaning Company, while engaged in washing windows in the fourth story of a building in the City of Atlanta, fell to the street below and was injured. He brought suit against Citizens & Southern Bank and M. L. Thrower, owners of the building, and against M. Kutz & Company, the tenant in possession, to recover damages for his injuries. The court sustained general demurrers and dismissed the petition, and the plaintiff excepted. The only allegations which are material and pertinent to the questions raised by the demurrer were as follows:

"(6)     That on or about April 16, 1926, Philip Culbreath was directed by his master for whom he was working, the National Window Cleaning Company, at the request of M. Kutz Company, to go to the place of said Kutz Company at Nos. 80 to 86 South

Pryor street, Atlanta, for the purpose of washing the windows of the building occupied by Kutz.

"(7)   That the plaintiff did as directed and went to said building, reporting upon his arrival to some agent of the defendant Kutz; that as per the instruction and contract of his master he immediately began, in the usual way, to wash the windows.

"(8)   That he had worked for some time washing windows on the fourth floor; that he was working on the outside of a window, standing upon the edge of the window sill, as was usual and customary, at about the hour of 10 a. m. on said date, holding with one hand onto the window sash, when the whole sash, guides and all, without any warning of any kind, pulled out of its location, causing plaintiff to be precipitated to the sidewalk four stories below, where plaintiff was seriously and permanently injured as will be set out hereinafter.

"(11)   It is alleged that plaintiff was washing windows on the fourth floor of a building located on the southeastern corner of Mitchell and Pryor streets; that to wash the outside of the lower sash it is necessary to put the lower sash up and the upper sash down, and then, when the lower sash is washed, push the upper sash back to the top to wash the same, as the upper sash is on the outside; that the plaintiff alleges he had the upper sash down and the lower sash up, washing it, and was holding onto the window by holding onto the top of the upper sash or window frame, as was necessary and usual; that after plaintiff had washed the lower sash, which was pushed up, plaintiff was in the act of pushing the upper sash back up into its place to wash it, holding on to the top of said sash, when the sash, without any warning of any kind, pulled out of the window frame and guides and fell with plaintiff to the sidewalk below.

"(12)   It is alleged that plaintiff was an experienced window washer; was in the exercise of ordinary care about his work at the time he was caused to fall and be injured.

"(13)   It is averred that plaintiff was lawfully upon the premises occupied by the Kutz Company; that he had a right to be thereon and was there at the invitation and request of said Kutz Company for the purpose of washing the windows on the fourth and other floors of said building.

"(14)   As alleged said premises were being rented by Kutz

Company from either Thrower or Citizens & Southern Bank, or both.

"(15) It is averred that it was the duty of said occupier, Kutz Company, prior to and at the time of causing the plaintiff to be put to work washing windows, to notify him and warn him of the defective condition of the guides, sashes, and window frames; that this defendant knew that the guides, sashes and window frames were old and rotten and decayed, having been in place 12 or 15 years, long enough for the nails holding them in place to become old, rusty and thin and of no account in holding said guides and frames in place; as alleged this defendant knew or ought to have known, had it been in the exercise of ordinary care, that when the plaintiff went to wash said windows the same would fall out and cause him to fall to his hurt and damage; that it was this defendant's duty to have inspected said windows, which it failed to do, in order that plaintiff could have been warned of the defective condition; that a reasonable inspection by a carpenter or mechanic would have revealed such defective condition; that the defendant knew plaintiff could not tell said window guides or frames were old, rotten and decayed by looking at them, and the dereliction of these stated duties on the part of Kutz Company is alleged as negligence against it.

"(16) It is alleged that the owner of said building Thrower and Citizens & Southern Bank were negligent in causing said building to be erected out of material too light for the purpose intended; that is the guides, sashes and frames in the windows were made up of material unsuited for windows that had to be washed in the usual way by a cleaner from the outside; that these defendants at the time of erecting said building knew that the window washers would of necessity have to stand on the outside of the window and hold on to the frame; that the frame was held in place by guides and that the guides would have to withstand the natural strain thus caused; that said owners knew that said buildings had been in place for 12 to 15 years and that the window guides, sashes and frames were old and decayed, that the nails were and had been in place a sufficient length of time to have become rusty and defective and ought to be replaced; that same was dangerous to window cleaners washing windows in the usual manner; that notwithstanding this knowledge on the part of the

owners, they failed and refused to inspect said building and allowed the window guides, frames and sashes to get in such fix as the same fell out, while being washed in the usual way, precipitating plaintiff to the sidewalk and thus causing his injury; that if the guides to said window had been nailed to the framing with good tenpenny nails when the building was put up, the same would have held and not fallen  as alleged.

"(17)  That the acts of negligence of all the defendants were concurrent acts causing or contributing to plaintiff's injury."

*Colquitt & Conyers, Sidney Smith,* for plaintiff.

*Slaton & Hopkins, McDaniel & Neely, Rembert Marshall, Alston, Alston, Foster & Moise,* for defendants.

BELL, J.  (After stating the foregoing facts.)  Courts take judicial cognizance of matters of common knowledge and common experience among men.  *So. Ry. Co.* v. *Covenia,* 100 *Ga.* 46 (29 S. E. 219, 40 L. R. A. 253, 62 Am. St. 312) ; *Snider* v. *State,* 81 *Ga.* 753 (1-a) (7 S. E. 631, 62 Am. St. R. 350).  Certainly, in the absence of positive and direct averments to the contrary, this court should judicially know that the windows of a building are designed for the purpose of affording light and air and in some cases perhaps for ornament or symmetry, and are not intended to support the weight of a man, however great or small, while he is engaged in cleaning them from the outside. It has been held that even an uncontroverted allegation in a pleading does not prevent the court from concluding otherwise by resorting to its own judicial knowledge.  Gottstein *v.* Lister, 88 Wash. 462 (153 Pac. 595, Ann. Cas. 1917D, 1008) ; 23 C. J. 174.  The allegation that the plaintiff was washing the windows in the usual and ordinary way, and that in doing so it was necessary to support himself by holding to the window, can not be given effect as an averment that the windows were intended to be used in such manner, in the face of what every man should know to the contrary.  Whether it should be held otherwise in case of direct and unequivocal allegations of a custom among those who erect and maintain buildings of the character of the one in question to have the windows so constructed and maintained as to serve as a safe and suitable support for the weight of workmen engaged in cleaning them as the plaintiff was doing need not be decided at this time.  In the present case it is enough to

hold that mere inferential averments that the plaintiff was cleaning the windows in the usual and ordinary way and that the defendants "knew that window washers would of necessity have to stand on the outside of the window" and hold to the frame in the manner stated are insufficient to establish that windows should be made suitable to such use.

Where an instrumentality is being put to a purpose or use not intended, the owner or person in control thereof is not liable for injuries occasioned thereby, unless he had actual knowledge that it was defective and unsuited for that purpose and also knew or should have anticipated that it would be diverted to the foreign use. As to the Kutz Company, the petition alleges only that this defendant knew or should have known that the plaintiff, in cleaning the windows, would use them as a support, although as to the other defendants the allegations are in terms more direct, declaring "that these defendants at the time of erecting said building knew that window washers would of necessity have to stand on the outside of the window and hold on to the frame." However, this appears from the entire petition to have been stated as a mere conclusion, and it is the settled rule that general allegations in the nature of a conclusion must yield on demurrer to the particular facts shown (*Moore* v. *Seaboard Air-Line Ry. Co.,* 30 *Ga. App.* 466 (4), 118 S. E. 471; *Central of Ga. Ry. Co.* v. *Lawley,* 33 *Ga. App.* 375 (3), 126 S. E. 273). When the petition is construed as a whole, it admits of no other construction than that the averment quoted above, and the others of like nature, depend solely upon the fact, elsewhere alleged, that it was customary in the trade of window cleaners for the operatives to perform the work in the way and manner set forth in the petition. This fact alone, relating as it does to a custom in a particular trade and not pertaining to the method of constructing and maintaining windows for the ordinary uses, would not suffice to establish that any of the defendants knew or should have anticipated that the plaintiff would use the window as a support while cleaning it. Hence, the petition fails to show any duty on the part of the defendants or either of them to expect or anticipate that the plaintiff would employ the window for such purpose or, in other words, misadapt it to the foreign use; and it follows that relatively to the plaintiff the defendants were not negligent either

in not constructing and maintaining the window suitably to the foreign use to which the plaintiff put it, or in not inspecting it and warning him of any defects therein. The allegations impute to the defendant constructive notice only, whereas, in the absence of something to show a duty on their part to have anticipated the plaintiff's act, a charge of constructive notice is insufficient. We conclude that the petition fails to show that any of the defendants were negligent with respect to the plaintiff. *Babcock Lumber Co.* v. *Johnson,* 120 *Ga.* 1030 (7) (48 S. E. 438); *Caudell* v. *Hardaway Contracting Co.,* 146 *Ga.* 48 (90 S. E. 470); *Balch* v. *Carling,* 102 *Ga.* 586 (29 S. E. 146); *East Tenn. &c. Ry. Co.* v. *Reynolds,* 93 *Ga.* 570 (20 S. E. 70); *Fulton Ice Co.* v. *Pece,* 29 *Ga. App.* 507 (2), 519, and cit. The rule is otherwise where an instrumentality was being put to a use intended, for in that case the owner or occupier must exercise care to have it safe for such use. The cases relied on by the plaintiff in error are of that nature and are thus distinguishable from the case at bar. See *Monahan* v. *National Realty Co.,* 4 *Ga. App.* 680 (62 S. E. 127); *Huey* v. *Atlanta,* 8 *Ga. App.* 597 (70 S. E. 71); *Mattox* v. *Lambright,* 31 *Ga. App.* 441 (120 S. E. 685); *Wynne* v. *So. Bell Tel. Co.,* 33 *Ga. App.* 516 (126 S. E. 864); Robinson *v.* Leighton, 122 Me. 309 (119 Atl. 809, 30 A. L. R. 1386, and note page 1390).

Moreover, from all the facts pleaded it affirmatively appears that the plaintiff was not in the exercise of ordinary care. Any person of common intelligence and ordinary prudence can easily conceive of numerous ways in which the plaintiff could have safely supported himself without depending upon the "guides, sashes, and window frames" for that purpose. If the method of support which the plaintiff adopted in this case is the one in common use by the members of his trade, it seems that as a class they are given to daring and do not observe the necessary and usual precautions which a prudent man should exercise. A person in a given class can not excuse himself for his own want of care by conforming to what is customary in the particular class, where the custom is in itself obviously dangerous and so appears from the plaintiff's declaration. *Mayfield* v. *Savannah &c. R. Co.,* 87 *Ga.* 374 (2) (13 S. E. 459); *Chattanooga R. Co.* v. *Myers,* 112 *Ga.* 237 (2) (37 S. E. 439); *Cawood* v. *Chattahoochee Lumber Co.,* 126 *Ga.* 159 (54 S. E. 944).

Questions of negligence and diligence are questions of fact, and therefore usually fall within the province of the jury; and yet where facts are considered on demurrer and where every rational interpretation thereof requires the conclusion as a matter of law that the plaintiff failed to exercise ordinary care or that the injury of which he complains was due to his own negligence, the demurrer should be sustained and the case ended without requiring the defendant, or, as here, the defendants, to resist a possible recovery not authorized under the circumstances set forth in the petition. *So. Ry. Co.* v. *Young,* 20 *Ga. App.* 362 (93 S. E. 51); *Hill* v. *L. & N. R. Co.,* 124 *Ga.* 243 (2) (52 S. E. 651, 3 L. R. A. (N. S.) 432). It would have been an easy matter for the plaintiff to test the strength of the window and all its parts before employing them for the extraordinary, foreign, and unintended use to which he put them, and we have no hesitancy in holding that he should have done so, provided he expected to employ the window as a support in the manner shown, especially in view of the hazard with which his work in such a position and at such a height would be attended. The work of cleaning the windows of a tall building from the outside is naturally a dangerous occupation, and one who in performing work of this character depends merely upon the assumption that the windows are in good order as windows go, that is, for the uses to which they are generally put, must be held to have accepted a risk so obvious that taking it amounted to a failure to exercise ordinary care for his own safety. One who knowingly and voluntarily takes a risk of injury, the danger of which is so obvious that no person of ordinary prudence would have subjected himself thereto, can not hold another liable for damages for injuries thus occasioned. *So. Ry. Co.* v. *Hogan,* 131 *Ga.* 157 (62 S. E. 64); *Zachery* v. *Madison,* 18 *Ga. App.* 490 (89 S. E. 594); *Bridger* v. *Gresham,* 111 *Ga.* 814 (35 S. E. 677); Civil Code (1910), § 4426.

The ideas that the defendants were not negligent and that the plaintiff was, both shoot from the same branch, for if it could be said that the window was intended to be used in the manner described, the plaintiff would, perhaps, have been authorized so to use it without incurring the imputation of negligence in doing so; but upon a consideration of the petition in its entirety and of all the facts disclosed, it appears, both from the same base

or premise, not only that the defendants were not negligent, but also that the plaintiff himself was guilty of such negligence or want of care as to bar a recovery. Under either of these theories, which really are twins, the petition failed to set forth a cause of action and the general demurrers were properly sustained.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*