34305. HOWERDD *v.* WHITAKER.

Decided March 18, 1953—Rehearing denied March 28, 1953.

*Cumming, Nixon & Eve, Samuel C. Waller,* for plaintiff in error.

*Harris, Chance & McCracken,* contra.

SUTTON, C. J.   The plaintiff alleges that he was employed by the defendant as a·servant to repair a gutter extending under the edge of the roof which runs around the third story of the defendant's dwelling, said roof being 100 feet in length and 25 feet in width, flat and covered with tin.   Said roof had a wooden banister running around it, consisting of a top piece, a bottom piece, and wooden pieces 1½ inches square and 2½ feet long between or connecting the top and bottom pieces of the banister. A portion of the flat tin roof extended approximately 20 inches beyond said banister; that is, the ledge around the roof was about 20 inches wide, and then the gutter extended 6 to 8 inches beyond the edge of the roof.   The bottom piece or rail of the banister was about 1½ inches thick and 2½ inches wide, and was 8 inches above the roof.   The banister was painted with a heavy, thick coat of white paint, and none of the wood was visible, but the banister appeared to be firm, sound, and strong.   It is alleged that, in order for the plaintiff to work on the 20-inch ledge of the roof extending beyond the banister, it was necessary for him to hold onto the bottom rail of the banister with his left hand while repairing the gutter with his right hand, and that, while doing so, the portion of the rail that he was holding broke, causing him to lose his balance and to fall from the roof; that the rail of the banister to which he was holding was rotten and disintegrated on the inside, but this was concealed and could not be seen, as it was covered with a heavy coat of paint. It is alleged in paragraph 19 that the defendant knew, or by the exercise of ordinary care should have known, that said wooden railing had been there for many years, the exact number being unknown to the plaintiff but well known to the defendant, who well knew or should have known that said wood was rotten and defective, had disintegrated, and had been covered over with a heavy coating of white lead paint, said paint having been placed on said railings at the direction of the defendant at a time unknown to the plaintiff but well known to the defendant.

The plaintiff alleges that he was the servant of the defendant in repairing the gutter and was being paid on an hourly basis.

While it is true that the master must furnish his employee a safe place to work, it is also true that "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself." Code, § 66-303. It is not alleged that the defendant had the building constructed, or that he had actual knowledge of the alleged defective railing on the banister, but the plaintiff bases his suit on the theory that it was the duty of the defendant to make an inspection of the banister before the plaintiff went upon the roof and to warn him of any defects therein, although it is alleged that the banister appeared to be sound, firm, and strong. In the absence of actual knowledge on the part of the defendant owner of any defect in the banister, and where it appeared to be safe and sound, how could it properly be said that there was any duty on him to inspect it, when he had no reason to think that an inspection was necessary? Ordinary diligence to discover defects is all that is required of an owner to an invitee, even. *Cuthbert* v. *Schofield*, 35 *Ga. App.* 443 (133 S. E. 303). If the banister appeared safe to the plaintiff, a workman, who was on the roof holding onto it, it no doubt would have appeared safe to the defendant also, despite the conclusion of the plaintiff that the existence of a defect could have been ascertained by the defendant by an inspection. "The alternative allegation that the defendants knew of a defect or could have ascertained the existence of a defect by an inspection, when construed most strongly against the pleader, as must be done on demurrer, shows no actual knowledge of any defect. Where the owner or occupier of premises is without actual knowledge of the existence of a defect, and there is nothing in the appearance or character of the premises or some instrumentality on the premises which would indicate the possible or probable existence of any defects, there is no reason to think an inspection necessary, and ordinary diligence would not require an inspection of the premises or an instrumentality upon the premises before permitting an invitee to make use of the same." *McCarthy* v. *Hiers*, 81 *Ga. App.* 365, 367 (59 S. E. 2d, 22). Also see *Williamson* v. *Kidd*, 65 *Ga. App.* 285 (15 S. E. 2d, 801); *Southern Bell Telephone &c. Co.* v. *Starnes*, 122 *Ga.* 602 (50 S. E. 343).

While it is alleged that it was necessary for the plaintiff to

hold onto the banister in repairing the gutter, still the petition shows that there was a ledge at least 20 inches wide for him to stand on while doing that work. Of course, if the banister was put there for ornament and symmetry, to give the building a balanced effect, and was not put there as a brace or to hold onto, for instance, while repairing the gutter, the owner would not be responsible for injuries occasioned by such foreign use, unless he had actual knowledge that the banister was defective and also knew or should have anticipated that it would be used to hold onto while the gutter was being repaired. "Where an instrumentality is being put to a purpose or use not intended, the owner or person in control thereof is not liable for injuries occasioned thereby, unless he had actual knowledge that it was defective and unsuited for that purpose and also knew or should have anticipated that it would be diverted to the foreign use." *Culbreath* v. *M. Kutz Co.*, 37 *Ga. App.* 425, 430 (140 S. E. 419). In that case a window washer was holding onto a window frame, which gave way while he was washing the window, and it was held, as a matter of law, that he could not recover. Also see *Hornsby* v. *Haverty Furniture Co.*, 85 *Ga. App.* 425, 431 (69 S. E. 2d, 630). In *Babcock Bros. Lumber Co.* v. *Johnson,* 120 *Ga.* 1030, 1032 (48 S. E. 438), a workman caught hold of a brace to support himself and fell, the brace not being intended to be used for that purpose. It was there said: "The master is responsible for the consequences of his negligence. But he is not an insurer; nor is he liable absolutely and at all events for every injury which is sustained by his employee. The master is not bound to exercise that extraordinary diligence which necessarily would be demanded if he were obliged to make every instrumentality safe for any and every use to which it might suddenly and unexpectedly be applied." And at page 1034 it was said: "Similar rulings have been made in cases almost identical with that at bar; for example, where a cornice fell when subjected to the unexpected use of supporting painters; or a window mullion fell when an employee rested thereon for the purpose of putting in a pane of glass; or where one grasped a slat not intended as a handhold; or leaned against a lath intended to steady the supports of a scaffold; . . or lost his balance in grasping a wooden 'horse' used in hauling up buckets;" etc.

In *Fulton Ice & Coal Co.* v. *Pece,* 29 *Ga. App.* 507 (116 S. E. 57), cited and relied upon by the plaintiff in this case, the instrumentality involved was an "ammonia shell brine cooler," in which ammonia gas was placed under pressure, which cooler had been in use for a long time and was worn and leaking; and, obviously, it was an instrumentality that required frequent inspections in the exercise of ordinary care. The *Pece* case, supra, was written by Judge Bell, who later wrote the opinion in the case of *Culbreath* v. *M. Kutz Co.,* supra, which, under its facts, is more like the present case than is the *Pece* case; and it was held in the *Culbreath* case, as a matter of law, that the plaintiff was not entitled to recover.

Under the allegations as set out in the present petition, we are of the opinion that the defendant was not required to make an inspection of the banister before allowing the plaintiff to go upon the roof to repair the gutter, and that the petition fails to set out a cause of action against the defendant.

There being a dissent, this case was considered by the whole court.

*Judgment reversed. Gardner, P. J., Felton, Townsend, and Carlisle, JJ., concur. Worrill, J., dissents.*

WORRILL, J., dissenting. Counsel for the defendant in the trial court devote the major part of their briefs in this court in arguing that, under the allegations of the petition, properly construed, the plaintiff was not, as stated in the petition, a servant of the defendant, but was an independent contractor in the engagement in question, and, therefore, not entitled to recover. If, however, the characterization as servant be erroneous, this would not of itself militate against recovery, because the plaintiff, even as an independent contractor, would be an invitee and entitled to protection under the Code, § 105-401, which provides as follows: "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." It could not reasonably be urged that the plaintiff was not in fact an invitee and, moreover, an express invitee, because it is affirmatively shown that he was engaged by the defendant to come upon

the premises in a matter of mutual interest, namely, the repairing of a gutter attached to the defendant's roof at compensation to the plaintiff on an hourly basis. It is alleged that in the prosecution of his work it became necessary to provide for his safety by holding onto a banister rail with his left hand while using his right hand in repairing the gutter. This rail was about 20 inches from the edge of the tin roof, as described in the petition. It is alleged that this was the only way he could execute his work, and that, if a ladder were used, the weight of it and himself would crush the gutter. While so holding on to the banister rail, which later inspection showed to have a rotten interior, and which he could not at the time detect because it was covered by a heavy coat of white lead paint, the rail broke as a result of such defective condition, and the plaintiff was thereby thrown to the paved walkway below with resulting injuries.

The right of an invitee and the duty of an owner or occupier of land towards him, especially with relation to the use of a portion of the premises not expressly named in the invitation, are set forth in *Georgia Power Co.* v. *Sheats*, 58 *Ga. App.* 730, 737 (199 S. E. 582), as follows: "Construing this section [§ 105-401], it was held in *Fulton Ice & Coal Co.* v. *Pece*, 29 *Ga. App.* 507 (116 S. E. 57): 'This section places upon such owner or occupier of land the duty to exercise ordinary care, for the safety of his invitees, in discovering defects or dangers in the premises or instrumentalities thereon, and imposes a liability for injuries resulting from such defects as a reasonable inspection would disclose. Such owner or occupier of land is liable for a failure to warn his invitees of dangers or defects in such premises or instrumentalities, of which he knew or of which it was his duty to know in the exercise of ordinary care.' See also *Coffer* v. *Bradshaw*, 46 *Ga. App.* 143 (167 S. E. 119); *Tybee Amusement Co.* v. *Odum*, 51 *Ga. App.* 1 (179 S. E. 415). In the *Coffer* case it was said: ' . . The duty to keep premises safe for invitees extends to all portions of the premises which are included within the invitation and *which it is necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended, and at which his presence should therefore reasonably be anticipated,*

*or to which he is allowed to go. . . If the invitee does not go beyond that part of the premises to which, as the situation reasonably appears to him, the invitation extends, he can not be held to have become a mere licensee because, as a matter of fact, the purposes of the invitation could have been fulfilled without going on such part of the premises.'* (Italics ours.) . . In *Smith* v. *Jewell Cotton Mills Co.*, supra [29 *Ga. App.* 461, 116 S. E. 17], it was held: 'Such invitation may cover the right as an invitee to be protected by the ordinary care of the owner not only upon such portions of the premises as may be necessary for mere ingress and egress, but upon those parts which are necessary or incidental to the mutual business or purposes of the invitation.' " See also *Rothberg* v. *Bradley*, 85 *Ga. App.* 477 (69 S. E. 2d, 293). The duty of the owner or occupier of premises to warn his invitee of dangers or defects of which he knew or in the exercise of ordinary care it was his duty to know applies to a latent peril as well as to a patent one. *Huey* v. *City of Atlanta*, 8 *Ga. App.* 597 (2) (70 S. E. 71); *Monahan* v. *National Realty Co.*, 4 *Ga. App.* 680 (6) (62 S. E. 127); *Hickman* v. *Toole*, 35 *Ga. App.* 697 (3) (134 S. E. 635); *Coffer* v. *Bradshaw*, 46 *Ga. App.* 143 (167 S. E. 119); *Fulton Ice & Coal Co.* v. *Pece*, 29 *Ga. App.* 507 (116 S. E. 57).

It is contended by the defendant in the trial court that the plaintiff should not be entitled to recover because he was injured in the same area of the gutter which he was engaged to repair. Several Kentucky cases are cited to support the argument. However, these are cases where the plaintiff was injured by the very thing which he was called upon to repair and where he assumed the risk of any defect therein. Cases to this effect in our own State might have been cited. See, among others, *Dartmouth Spinning Co.* v. *Achord*, 84 *Ga.* 14 (10 S. E. 449); *Southern Ry. Co.* v. *Coleman*, 42 *Ga. App.* 649 (157 S. E. 239). In the present case, the plaintiff was injured by reason of a defective banister railing, and not by the gutter which he was engaged in repairing. If it could be said that in holding the banister rail for support he was exceeding the purview of the invitation of the owner of the premises, he would, under the authorities above mentioned, be barred from recovery. However, a jury could very properly find that it was a reasonable con-

clusion on his part that the invitation included the use of the banister railing, under the circumstances of his engagement, where otherwise the prosecution of his work upon the gutter would invite disaster. It would be straining credulity to say that the owner of the premises, knowing that there was only a ledge of about 20 inches adjacent to the gutter, and upon which no prudent workman would hazard his safety in the act of stooping to repair the gutter, would not expect such workman to avail himself of the banister railing for his own protection. In the *Fulton Ice & Coal Co.* case, supra, there was an injury because of an explosion of a drum upon the premises, due to a latent defect, and near which the plaintiff was sitting. Relative to the duty of the proprietor it was there said by Judge Bell, speaking for the court (at p. 515): "It is the duty of the proprietor in such a case to use ordinary care to see that his premises are in a safe condition for those whom he invites thereon for any lawful purpose, either expressly or by implication. If he does not know the condition of his premises, it is his duty, in the exercise of ordinary care, to find out their condition, and he will be liable for such defects as a reasonable inspection would have disclosed. [Citing.] . . If there were defects in the drum or tank as alleged, they may be treated as defects of the premises, since this affected the safety of the premises within the range of danger from the explosion. . . If this ordinary care required an inspection and warning, the defendant would be liable for a failure in these respects."

But, says the plaintiff in error, it would work an undue hardship to require the owner, and especially an invalid as might sometimes happen, to go upon a roof to inspect it before permitting a laborer thereon. There was no allegation that the roof was defective or that it was to be repaired. The subject matter of the repairs was the gutter, and the question of recovery turns on whether or not the use of the banister railing was within the extent of the invitation. I think that a jury would be authorized so to find. As stated in the *Fulton Ice & Coal Co.* case, supra, the duty here owed is analagous to that owed by a master to his servant, and it was further said, at p. 519, in that well-considered opinion (affirmed by the Supreme Court, 157 *Ga.* 105, 120 S. E. 636): "In this class of cases it has

been held that where facts are pleaded which disclose the relation from which such duty of the master arises, a general allegation that the master knew, or ought in the exercise of ordinary care to have known, of defects resulting in injury to the servant is not objectionable and is sufficient to charge a liability upon the master for such defects." It was then held that that case—involving a proprietor and a servant of an independent contractor—came within the same principle and that an averment, as in the present case, that the "defendant knew or ought to have known of the defects from which the injury resulted is sufficient to set forth a cause of action in this particular respect." It was also held that the plaintiff did not "assume the risk of defects in the appliances which are independent of those which he is called upon to repair, and of which he could not have known in the exercise of ordinary care." The allegations of the present petition bring the defendant within the principle just announced. If, as suggested by the defendant, the proprietor or owner is not able personally to make an inspection, he should not be relieved of his duty to know the condition of his premises, because the way is open to him to have it inspected by another. An expert might determine the condition of the railing by sounding or in other ways, and, as it was said of the drum in the *Pece* case, supra, it can not be held as a matter of law that an inspection would be so impractical that in ordinary diligence detection of the defective condition could not be accomplished.

In my opinion this case is distinguished from those where a person can not recover when injured by a defect in the very thing he is called upon to repair, and falls within the principle of law embodied in the statute (Code, § 105-401), fixing upon the owner or occupier of land the duty to keep his premises and approaches safe, in the exercise of ordinary care, for an invitee. The plaintiff here was injured by an instrumentality separate and distinct from the gutter which he was engaged to repair; and, as an invitee, whether he be called servant or independent contractor, he was, in my opinion, entitled to recover upon proof of the allegations of the petition. As stated by Judge Powell in *Huey* v. *City of Atlanta*, 8 *Ga. App.* 597 (70 S. E. 71), the old English case, regarded as the leading one, Indermaur *v.* Dames, L. R. 1 C. P. 274, laying down the doctrine embodied

in our Code, "goes on to say that the common case in which this doctrine is involved is that of a customer in a shop, but that this is only one of a general class, that it includes all persons who go on others' premises, not as mere volunteers, or licensees, but upon business which concerns the occupier, and upon his invitation, express or implied." He further states (at p. 604): "The petition in the present case, as against general demurrer, presents an instance of a person who, being lawfully upon another's premises for a designated purpose, and who, having occupied the position on these premises naturally and normally to be anticipated by the proprietor of the premises, has been injured by a dangerous condition, existing thereon of which the proprietor of the premises had knowledge and of which the visitor did not have knowledge, actual or constructive. In such a case the duty to warn exists, and it exists independently of any contract raising the duty; it is one of those duties imposed by the social compact defining man's elementary duties and liabilities to his every fellow man—a duty recognized as a corollary to or an extension of the maxim 'Sic utere tuo ut alienum non laedas'." In the case referred to, there was actual knowledge of the defect or danger, but, as hereinabove pointed out, where the relationship of owner or occupier of land and invitee is shown, an allegation that the occupier knew or in the exercise of ordinary care should have known of the defect is sufficient.

For the reasons above stated, I am of the opinion that the petition set forth a cause of action, and that the court did not err in overruling the general demurrer.